STATE EX REL. SCOTT, RELATOR, v. DISTRICT COURT ET AL., RESPONDENTS.

(No. 4,682.)

(Submitted September 27, 1920. Decided October 4, 1920.)

[192 Pac. 829.]

*Supervisory Control — Contempt — Divorce — Failure to Pay Alimony—Commitment to Jail—When Void.*

Contempt—Failure to Pay Alimony—Supervisory Control—Writ Does not Lie, When.
1. The writ of supervisory control does not lie to relieve one from punishment under an order finding him guilty of contempt for failure to pay temporary alimony, where he neither made application for a modification or revocation ·of, nor appealed from, the order awarding the alimony.

Same—When Inability to Comply not Defense.
2. Inability to comply with an order awarding alimony *pendente lite* was no defense to a charge of contempt where, after the court had adjudicated his ability to pay, contemnor voluntarily encumbered the property disclosed to the court, and thus put it out of his power to comply with the order.

[Inability to comply with order or decree for alimony as defense to charge of contempt, see note in 15 Ann. Cas. 945.]

Same—Defense—Estoppel.

3. The record not disclosing under what representations and circumstances the wife of contemnor signed the mortgage referred to above, the contention that she was estopped to claim that by mortgaging his property he purposely disabled himself from complying with the court's order directing payment of temporary alimony to her *held* without merit.

Same—When Order Committing Contemnor to Jail Void.

4. *Held,* on supervisory control, that the authority of the district court •to commit a contemnor to jail until its order directing him to pay temporary alimony should be complied with was, under section 7319, Revised Codes, contingent upon a showing that it was within his power to comply, and that, therefore, the record showing that at the time of his commitment he was financially unable to obey the order, his commitment was void.

Original application for writ of supervisory control, on the relation of Paul Scott against the District Court of the Thirteenth Judicial District in and for the County of Yellowstone and Honorable A. C. Spencer, a Judge thereof. Writ issued.

Cause submitted on briefs of counsel.

*Messrs. Collins, Campbell & Wood,* for Relator.

· The theory of the relator is that the contempt order of June 24, 1920, was improper and void for the following reasons, to-wit: First, that the record shows a complete inability upon the part of the relator at all times since May 15, 1920, to comply with the alimony order here involved; and, second, that the record shows that the plaintiff has no meritorious cause of action in the court below against the relator herein, and that the action in the lower court is not being prosecuted in good faith.

As preliminary to a discussion of these matters, we take the position that the relator is in no wise concluded by the alimony order of May 15, 1920.

In 2 Black on Judgments, second edition, paragraph 692, the author says: "The doctrine of *res judicata,* in its strict sense, does not apply to incidental or interlocutory orders

The question of inability to pay alimony as defense to contempt is discussed in notes in 24 L. R. A. 433; 30 L. R. A. (n. s.) 1001; L. R. A 1917C, 97.

made in the progress of a cause.'' (*Gay* v. *Gay,* 146 Cal. 237, 79 Pac. 885; *Woodall* v. *Woodall,* 136 Ga. 700, 71 S. E. 1099.)

It is also settled law that if the order of May 15, 1920, was void, as we contend is the case, it was not necessary for relator to appeal from the order to obtain relief, but that he could attack it directly, as was done by the motion incorporated in his return to the order to show cause, or could allege its invalidity as a defense in any proceedings taken to enforce the order. (29 Cyc. 1520, par. 4.)

In *State ex rel. Mannix* v. *District Court,* 51 Mont. 310, 152 Pac. 753, this court has approved the rule above in the case of *Kamp* v. *Kamp,* 59 N. Y. 212, involving an alimony order which, it was contended, was void and made without jurisdiction.

Furthermore it is settled law that the respondent court had the authority to vacate the order of May 15, 1920, since the application was made at the same term (29 Cyc. 1518); and apart from this fact, the order itself permits a modification during the progress of the action. Therefore, with the invalidity of the order of May 15, 1920, established, as we contend it is by the record herein, and the court having the power to modify or annul the order, the relator was not concluded by the order and it affords no basis for the contempt order of June 24, 1920.

Inability to comply with an alimony order having been established, this was a good defense to a charge of contempt for a violation of the alimony order. (*State ex rel. McLean* v. *District Court,* 37 Mont. 485, 15 Ann. Cas. 941, 97 Pac. 841). We can find no justification whatever in the record for the entry of the order of June 24, 1920, for inability to pay clearly appears, and this inability is not the result of voluntary or contumacious acts of the relator. If it is contended that the act of the relator, subsequent to the order of May 15, 1920, in mortgaging the eighty acres of dry grazing land, was a voluntary and contumacious act, it should be borne in mind, first, that the total value of the land so mortgaged does not exceed $480, and that the alimony required to be paid

under the order of May 15, 1920, aggregates the total sum of $450, plus $60 per month; that the relator so acted upon the insistent demands of the creditor bank to save a foreclosure that would wipe out all of his property; and that last, and most important of all, the plaintiff in the action in the court below, for whose benefit the alimony order was entered, approved of the action taken by the relator in this respect and indorsed it by signing the notes and mortgage with the relator.

In connection with any such contention, if made, see 1 Bailey on Jurisdiction, paragraph 304s. Under the doctrine announced by Bailey, a violation of the order of May 15, 1920, with the facts as they exist in the record, would be but a civil contempt at most; and since a civil contempt consists in a failure to do something ordered to be done in a civil action for the benefit of the opposing party therein, we submit that the consent of the opposing party to the act which necessarily results in a failure to do the thing ordered (and the opposing party herein—the plaintiff in the court below— has consented) is such a waiver that contempt proceedings cannot properly be instituted, and there is further wanting, under such circumstances, an essential element of a contempt— that is, disobedience, for the order must be deemed to have been modified by the waiver and not disobeyed. Neither under such circumstances can the failure of one to comply with an alimony order be deemed willful, for the resultant inability to comply with the order is brought about through co-operation with the person for whose benefit the order was made, and not for the purpose of maliciously depriving such other party of anything, or of defying the court which made the order. To hold a person guilty of contempt under these circumstances would, indeed, be to imprison for a mere debt, for no element of willful disobedience exists.

The action in the district court is not being prosecuted in good faith and plaintiff has no meritorious cause of action for a divorce. The law is that a court is without jurisdiction

to make an order for alimony *pendente lite* where it appears, as we contend it here does, that the divorce action in which the order for alimony is sought is not being prosecuted in good faith and that the plaintiff therein has no meritorious cause of action against the defendant. The very terms of our alimony statute (sec. 3677, Revised Codes) so imply, for an action for divorce is not in reality pending if the plaintiff therein has no meritorious cause of action. The authorities hereinafter cited establish this rule beyond question. (*Countz* v. *Countz,* 30 Ark. 73; *Whitney* v. *Whitney,* 22 How. Pr. (N. Y.) 175, 177; *Brindley* v. *Brindley,* 121 Ala. 429, 25 South. 751, 752; *Williams* v. *Williams,* 114 Ga. 772, 40 S. E. 782; *Zeigenfuss* v. *Zeigenfuss,* 21 Mich. 414; *Dougherty* v. *Dougherty,* 8 N. J. Eq. 540; *Monk* v. *Monk,* 30 N. Y. Super. Ct. 153; *Slocum* v. *Slocum,* 86 Ark. 469, 111 S. W. 806, 807; *State ex rel. Lloyd* v. *District Court,* 55 Wash. 347, 25 L. R. A. (n. s.) 387, 104 Pac. 771, 773; *Glasser* v. *Glasser,* 28 N. J. Eq. 22; *Jones* v. *Jones,* 2 Barb. Ch. (N. Y.) 146; *Snyder* v. *Snyder,* 3 Barb. (N. Y.) 621; *Burrow* v. *Burrow,* 6 Lea (Tenn.), 499; *Cooper* v. *Cooper,* 185 Ill. 163, 56 N. E. 1059; *Beekman* v. *Beekman,* 53 Fla. 858, 43 South. 923; 19 Corpus Juris, "Divorce," pars. 510, 519.)

*Mr. E. E. Enterline* and *Mr. J. W. Snellbacher,* for Respondents.

Relator made no application to the district court to vacate or modify the order of May 15, 1920, nor has he appealed from it, hence cannot now complain. The right to appeal is expressly given by our statute and upheld by numerous decisions of this court. (Rev. Codes, sec. 7098; *In re Finkelstein,* 13 Mont. 425, 34 Pac. 847; *State ex rel. Nixon* v. *Second Judicial District Court,* 14 Mont. 396, 40 Pac. 66; *State ex rel. Heinze* v. *Second Judicial District Court,* 28 Mont. 227, 72 Pac. 613; *Bordeaux* v. *Bordeaux,* 32 Mont. 159, 80 Pac. 6.)

If the divorce action was not being prosecuted by the wife in good faith, the relator should have made that showing at

the hearing had on May 15, 1920. Having failed so to do and having failed to appeal from the order of May 15, 1920, he was in no position to successfully attack the order of May 15, 1920, by the evidence which he sought to introduce in the contempt proceedings.

It is next contended by counsel for relator in their brief that if the order of May 15, 1920, was void, the relator had a right to attack it as he did in the contempt proceedings, and authorities are cited in support of such contention, but unfortunately in this case counsel for relator are confronted with a valid order. It is elementary and authorities need not be cited to show that there is a marked distinction between a void order and a voidable order or an order erroneously made upon a hearing in some action. This court is in no position to know what evidence was adduced at the hearing had on May 15, 1920, and even if it was, the same could not be considered in an application for a writ of supervisory control.

The facts in the case of *State ex rel. McLean* v. *District Court,* 37 Mont. 485, 15 Ann. Cas. 941, 97 Pac. 841, cited by counsel for relator in their brief in support of their contention that the contempt order under review is invalid, are clearly distinguishable from the facts in the case at bar.

There is no merit whatever in the contention that because the wife joined in a mortgage to secure an indebtedness of the relator theretofore secured by a mortgage to a bank and in which last mortgage encumbered lands owned by relator were included, she thereby waived her right to receive alimony, suit money and counsel fees in the divorce action. The relator's own testimony discloses that he never asked his wife to sign the mortgage but that she was requested so to do by some of the bank officers, and he also testified that he did not advise the bank that he was ordered to pay his wife alimony.

It is next contended that if the record before this court establishes that the action in the lower court is not being

prosecuted in good faith or if the plaintiff in the action has no meritorious cause of action against the relator, the theory of relator's counsel is that the alimony order of May 15, 1920, was void and was made without jurisdiction, and that consequently the relator cannot be charged with contempt for violating the order. The record does not establish any of those matters, and even if it did, the same would have to be reviewed on appeal and not by a writ of supervisory control. Those matters would in no sense affect the jurisdiction of the trial court to make the order but might establish the fact that the order made against such showing would be erroneous. In this connection the counsel for relator in their brief cite the case of *Rumping* v. *Rumping,* 41 Mont. 33; 108 Pac. 10, in support of their contention that alimony cannot be allowed where it appears to the court that the action has not been instituted in good faith and that the wife has no meritorious cause of action against the husband. Counsel for relator entirely overlook the fact that the proper time to make such showing would be at the time of the hearing for the allowance of alimony and not in the contempt proceedings instituted after the order of allowance has been made. Whether such showing was made or not does not and could not appear in this proceeding. Authorities are cited and quotations made by counsel for relator in their brief concerning the allowance when there is a lack of good faith on the part of the wife in the prosecution of a divorce action, but in none of them do we find that the action of the trial court can be reviewed in a contempt proceeding instituted for the failure of the husband to comply with an order allowing the wife alimony.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On application for writ of supervisory control. On June 24, 1920, relator was adjudged guilty of contempt for failure to comply with an order of the respondent court, made May

15, 1920, directing the payment of alimony *pendente lite,* suit money, and attorney's fees in divorce proceedings instituted by the wife of relator, and was ordered committed to jail ·until such order is complied with. In his return to the citation, relator, who will be hereafter referred to as the defendant, set out as cause why he should not be punished: First, that he was without means, without employment, and without property which might be sold, mortgaged or pledged; and, second, that the allegations of the complaint in the divorce proceeding, to the extent of the denials filed at the time of making the return, were untrue, that plaintiff had not a meritorious cause of action, and that the suit was not prosecuted in good faith.

On the hearing, defendant testified that he was a stockman, and could not find employment as such. He, however, testified that he had a prospect of employment near Melville, which employment would be permanent, but "did not think it best to go to work right away, because I had to go back and forth here to Billings on this business." On cross-examination he admitted that farmers were short-handed, but stated that he knew little of such work. It appears further from the transcript that, at the time the court made the order for alimony, *etc.,* defendant was the owner of 160 acres of land and forty-one head of cattle, of which eighty acres of the land and all of the cattle were mortgaged to secure a note of approximately $5,000, and that the unencumbered eighty acres were grazing land of the value of $6 per acre. It further appears that interest, amounting to the sum of $248.60 was past due on the mortgage note, and that, subsequent to the making of said order, defendant, in order to secure the payment of such interest and a like amount falling due June 30, 1920, executed and delivered to the bank his note and mortgage on the additional eighty acres, and that the plaintiff joined with him in the mortgage.

In support of the second contention of defendant, he and his father testified, over the objection of counsel, that the

allegations of the complaint were false. No evidence was introduced on behalf of the plaintiff.

Counsel for defendant, relator herein, contends that the [1] original order should not have been made, in the light of the disclosures made on the hearing of the contempt matter, citing in support of his contention the opinion of this court in the case of *Rumping* v. *Rumping,* 41 Mont. 33, 108 Pac. 10, to the effect that "No allowance for temporary alimony should be made, if it appears of record that the suit of the applicant, or the defense interposed by her, as the case may be, is without any just or reasonable foundation, so that there is no probability of her success." However, on what evidence the court granted the original order does not appear in the record here; certainly, the matters set up in the answer filed at the time of making return to the citation for contempt were not before the court, present counsel was not employed until after the citation, and what took place before the date thereof is not before us. All that we have to consider are the facts presented by the record, to-wit, that an order was made, which order recited that it was subject to modification. The defendant made no attempt to have the order modified or annulled, but proceeded to disregard it.

Under similar circumstances and like contentions as are here made, in the case of *State ex rel. Bordeaux* v. *District Court,* 31 Mont. 511, 79 Pac. 13, this court said of the adjudication of contempt and commitment until the order of the court was complied with: "The action of the court was correct. If he could not, by stress of circumstances, comply with the order of the court, it was his duty, for his own protection, to go into court, relate the circumstances, and pray for a revocatioin or modification of the order directing him to pay alimony." So here, such was the plain duty of defendant, or, if, as contended by counsel in his second ground stated, defendant was of the belief that the order and decision of this court were contrary to the evidence, he should have appealed therefrom, as such an order is, in effect, a judgment

from which an appeal lies. (*In re Finkelstein,* 13 Mont. 425, 34 Pac. 847.) Having failed to either apply to the court for a revocation or modification of the order, or to appeal from the judgment of the court, it was the plain duty of the defendant to obey its mandates.

The court had jurisdiction of the subject matter of the original application. and of the defendant, and, as declared in *State ex rel. Coad* v. *District Court,* 23 Mont. 171, 57 Pac. 1095, "the judge had the power to decide the questions involved, wrong as well as right," and, even though the court may have reached an erroneous conclusion on the facts presented, "it was his [defendant's] duty to obey the writ, at all hazards, until the judgment awarding it could be reviewed and annulled on appeal." Having failed to do so, the district judge was clearly within the proper exercise of his power in punishing failure to obey the order.

The case of *State ex rel. Mannix* v. *District Court,* 51 Mont. 310, 152 Pac. 753, cited by counsel, to the effect that "one is not bound to appeal from a void order, but may resist it and assert its invalidity at all times," is of no avail to the defendant, as there the order complained of was void for want of jurisdiction of the court to make it; here, as in the *Coad Case,* the court had jurisdiction to make the order, and the only question presented is: Did the court err in making it under the evidence presented? This question was not raised in any proper proceeding in the district court, unless by the motion to annul, made at the time of return to the citation for contempt; and it may well be that, in overruling that motion, the court invoked the rule that "he who comes into a court of equity must come with clean hands."

It is contended by counsel that a showing of inability to [2] comply with the order is a good defense to a charge of contempt, citing *State ex rel. McLean* v. *District Court,* 37 Mont. 485, 15 Ann. Cas. 941, 97 Pac. 841. But the facts showing inability to comply, in the *McLean Case,* and on which the court held that the defendant was purged of contempt,

were very different from those here presented; there the defendant had acted in good faith on an order of the court, and was in nowise responsible for the action of the court in later setting aside the original order. Here the court had adjudicated defendant's ability to pay, and he thereafter voluntarily encumbered the property disclosed to the court, from which he could have secured funds to, at least partially, comply with the order of the court. The case comes clearly within the rule laid down in the *Bordeaux Case,* cited, that upon failure to apply to the district court for a revocation or modification of the order, the writ of supervisory control will not lie to relieve a defendant from punishment for noncompliance with such order.

It is further contended that the plaintiff in the divorce [3] action was in no position to complain of the act of the defendant in mortgaging the property theretofore unencumbered, because she approved of that act, and indorsed it by signing the note and mortgage complained of. If the record disclosed knowledge on the part of the wife that the mortgage was given to secure the payment of interest due the bank, the fact might well be considered by the court as acquiescence in the act of the defendant, and might change the court's view of the entire proceeding; but the record is silent as to what representations were made to the plaintiff, and under what circumstances she signed the note and mortgage. So far as the record discloses, she may be presumed to have signed on the reasonable assumption that the presentation of a note and mortgage on the only available property in the possession of the defendant, shortly after the court had ordered the payment of alimony, was but a step toward compliance with the order, and that the proceeds of such transaction would be immediately applied in conformity with the order. In view of the record on the subject, such act on her part has no significance or weight in determining the guilt or innocence of the defendant.

If the foregoing constituted all the questions involved in [4] the application, we should have no hesitancy in denying the writ and dismissing this proceeding; but the final contention of relator constitutes, in our opinion, an insurmountable barrier to such disposition of this matter. That contention is that, in the light of the showing made, the order committing the defendant to jail until the order of May 15, 1920, is complied with, violates the express provisions of our statutes on the subject of contempt.

There are, in this state, but two provisions of the statute controlling the court's disposition of contempt matters: Section 7318, Revised Codes, provides that, if it is adjudged that the contemnor is guilty of contempt, ''a fine may be imposed on him not exceeding five hundred dollars, or he may be imprisoned not exceeding five days, or both.'' Section 7319 provides that: ''When the contempt consists of the omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he shall have performed it.'' The first provision is for the *punishment* of the offender; the second provides a method of enforcing the court's order.

The respondents herein proceeded under the authority of the latter provision; but we search the record in vain for any intimation that the act to be performed, to-wit, the payment required by the order, ''is yet in the power of the person to perform''; indeed, the whole record negatives such a conclusion and clearly sets forth that, no matter what his condition at the time of making the order, and no matter how he was divested of the power to meet its requirements, at the time the contempt judgment was rendered the defendant was absolutely incapable of meeting the payments required, or any part thereof.

The power of the court to punish disobedience to its orders by imprisonment is so well settled that the citation of authorities is unnecessary. But that power depends upon a proper showing; and it is also well settled that, even in the absence

of such a statute as ours, the court is without authority to commit the contemnor until the court's order is complied with, where that requirement is the payment of money, if it appears that he is not able to pay. (*State* v. *Brewer*, 38 S. C. 263, 37 Am. St. Rep. 763, note, 19 L. R. A. 362, 16 S. E. 1001.)

Bailey on Jurisdiction, volume 1, paragraph 304s, quoting from a New York case, says: "To hold that the petitioner, though penniless, must suffer a life imprisonment for debt because of the peculiar form in which the imprisonment was imposed, would be gross violation of the plain intent of the Code." And, if the court is vested with such authority, of what avail to the plaintiff in the divorce proceeding is the continued imprisonment of the defendant?

However, aside from the consideration of precedent or the dictates of reason or justice, our statute is controlling, and its provisions are plain and certain: The court's authority, under section 7319, is contingent upon a showing that "the act is yet within the power of the person to perform," and we cannot enlarge upon the statute.

Counsel for respondents contend that the *Bordeaux Case,* *supra,* is an authority to the contrary; but we find no conflict between the declarations in that case and the views here expressed; it there appeared that the order violated required the payment of $100 per month, and that the defendant possessed property valued at $60,000 and had an income of more than $400 per month. Here the undisputed evidence is that defendant had neither money, property, income nor employment. From the evidence adduced, the court might well have determined that the acts of the defendant in placing his unencumbered property out of the reach of process, in failing to even attempt to raise the amount required, and in failing to secure employment, were willful, voluntary and contumacious, and could have thereupon declared him guilty of contempt, and proceeded to fix his punishment in accordance with the provisions of section 7318. The court was, however, with-

out authority to commit relator to jail until he should perform an impossible act.

For the reasons above stated, the writ will issue, commanding the said district court to annul its order of June 24, 1920, but with direction to the court to enter its judgment in conformity with the provisions of section 7318, if, in its opinion, the facts, as heretofore suggested, warrant such a judgment.

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, HURLY and COOPER concur.