STATE EX REL. FLOCH, RELATOR, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 7,827.)

(Submitted May 24, 1938.  Decided July 23, 1938.)

[81 Pac. (2d) 692.]

186

Mr. *James T. Fitzgerald,* for Relator, submitted an original and a reply brief, and argued the cause orally.

Mr. *E. M. Keeley,* for Respondents, submitted a memorandum of authorities, and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an application for a writ of supervisory control to review the action of the District Court of the Third Judicial District in contempt proceedings arising out of a divorce action. The petition contains the following allegations:

That on the 8th day of June, 1933, plaintiff, relator herein, instituted an action for divorce in the Fourth Judicial District against Margaret B. Floch, defendant, upon the grounds of extreme cruelty. Issues were joined by defendant's answer and cross-complaint and plaintiff's reply thereto. During the pendency of the action certain negotiations were had between the parties, whereby a property settlement was entered into. Plaintiff executed a deed to defendant for some real property, and also surrendered to her valuable personal property. Thereafter defendant withdrew her cross-complaint and answer to plaintiff's complaint, and judgment was taken against her by default. An absolute decree of divorce issued thereafter to plaintiff on the grounds prayed for in his complaint.

In the negotiations between plaintiff and defendant prior to the entry of the default judgment, provision was made for the care, custody, control, education and support of their two minor children. Plaintiff was to have the minor son, and defendant was to take the minor daughter. It was further mutually agreed that plaintiff should be forever released and discharged by defendant from any and all obligations and payments to her of alimony and from any obligations and payments to her for the care, custody, control, education, maintenance and support of the minor daughter. Each entered upon the discharge of such duties and responsibilities toward the children. Not until this settlement had been entered into was the decree of divorce granted without provision for the custody or support of the children.

In the autumn of 1936, defendant having failed and neglected to discharge her duties and obligations in the care of her minor daughter, the plaintiff provided and furnished the daughter with a comfortable home and looked after her education. At

the close of the school year of 1936–37, defendant without cause or reason induced both the minor children to leave their father and remain away from the home he had furnished and provided for them, and ever since has refused to allow the minor son to return to him.

In November, 1937, defendant commenced proceedings in the Fourth Judicial District court for a modification of the decree of divorce awarded plaintiff in 1934. Both parties were present and apparently each sought some modification. As a result and consequence of such proceedings an order modifying the original decree was made. This modification was not made by the judge who awarded the original decree. The modified order awarded custody of the children to defendant; directed plaintiff to pay an attorney's fee of $50 and $30 per month for each of the minor children; and made him liable for the payment of certain hospital and doctor bills incurred by defendant in behalf of the minor daughter in the amount of $200.

December 28, 1937, plaintiff filed a petition in the district court praying that court for an order modifying its order of November 27, 1937 (hereafter referred to as the Besancon order, the original decree of divorce having been granted by the Honorable Theodore Lentz). Plaintiff disqualified Judge Besancon and thereafter Judge Arnold was called in "to hear, try and determine any and all matters arising out of or from the above entitled action." Judge Arnold thereupon assumed jurisdiction of all such matters, including contempt proceedings instituted January 6, 1938. Thereafter he granted a petition for change of venue, staying all matters noticed for hearing, including the contempt proceeding, and transferred everything of record to the Third Judicial District. The contempt proceedings referred to arose out of alleged disobedience by plaintiff of the Besancon order.

The parties appeared on the day set for hearing, and plaintiff announced that he was ready to proceed with the trial and hearing of his petition to modify the Besancon order. The court refused to hear the petition, refused him a trial thereof and continued the same to February 9, 1938, and made an order

requiring him to plead to the alleged contempt. The matter was then indefinitely continued until a later date. On March 4, 1938, all parties being present, counsel for defendant objected to the hearing and trial of plaintiff's petition, and asked the court to dismiss the same, objecting to any proceedings whatsoever, save and except to hear him as to his financial ability to comply with the Besancon order. Thereupon the question of alleged contempt was submitted upon briefs to the court. Thereafter, on motion of defendant's counsel, the court signed and filed an order on April 14, 1938, dismissing the contempt proceeding; however, on April 9, 1938, defendant had commenced a new contempt proceeding. On April 30 thereafter, plaintiff had all three matters pending set for Friday, May 6, 1938—the motion to quash and dismiss plaintiff's petition, the trial and hearing of the petition, and the contempt proceedings. Plaintiff filed an answer to the accusations of contempt.

From the minute entry of the proceedings it appears that on the morning set for hearing, all parties being present, plaintiff was sworn and his examination begun. Counsel for defendant objected to the introduction of any testimony in support of plaintiff's motion to modify, on the ground that plaintiff was then in contempt of court, and of which contempt he must purge himself before testifying in support of his motion to modify. The objection was sustained, and plaintiff was then heard on the matter of purging himself of the contempt. Other testimony was received, and plaintiff rested. Defendant also rested and renewed her objection upon the additional ground that plaintiff had been given the opportunity to purge himself and had not done so. This objection was sustained, and hearing on plaintiff's petition to modify the Besancon order was denied.

The court then proceeded to the hearing of the contempt charges and, upon the evidence adduced, plaintiff was adjudged guilty and sentenced to serve five days in jail and fined in the sum of $100. He was granted a ten-day stay of execution, during which time application was made to this court for an alternative writ of supervisory control. The writ issued, and

on the return day the cause was argued on the merits and on the motion to quash.

Plaintiff denies that he is in contempt of court, by reason of the fact that the order made by Judge Besancon is void for want of jurisdiction. It is his contention that the original decree of divorce became absolute and final, and, no provision having been made therein for the custody and care of the children, no jurisdiction remained thereafter in the court to modify the decree with relation to them. Further, it is the position of plaintiff that prior to the divorce, the parties having made a settlement with respect to the children as well as to the property and pursued a course of conduct in conformity with that settlement, that conduct and understanding must control, and that the parties are bound thereby. With these contentions we cannot agree.

We are familiar with the statutes and decisions providing for and upholding property settlements and private agreements between husband and wife, and do not question that right; however, the general principles obtaining do not in every case control where the welfare of minor children is concerned. In such instances the matter is set clearly at rest by statute and decision in this state. Section 5770, Revised Codes, provides: "In an action for divorce the court or judge may, before or after judgment, give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same." (Compare sec. 138, California Civil Code, from which sec. 5770, supra, was taken; see, also, 9 Cal. Jur., secs. 143, 146; *Lewis* v. *Lewis,* 174 Cal. 336, 163 Pac. 42; *Harlan* v. *Harlan,* 154 Cal. 341, 98 Pac. 32; *Howe* v. *Howe,* 206 Cal. 1, 272 Pac. 751; *Rosher* v. *Superior Court,* 9 Cal. (2d) 556, 71 Pac. (2d) 918.)

Counsel for plaintiff expresses familiarity with the above section in his brief, but denies its application here by reason of the fact that no mention was made of the children in the original decree of divorce, and for the further reason that their care and custody had previously been arranged by private agreement between the parties. The error in this is clearly

illustrated by the case of *Kane* v. *Kane,* 53 Mont. 519, 524, 165 Pac. 457, a case wherein the subjects of custody, control and education of the child were omitted altogether—the same as here—from the decree as originally rendered. In that case the court said: ''Though the separation agreement is binding upon the parties to it and regulates their rights and obligations *inter sese,* it is not binding upon either the child or the court. If its provisions for the care of the child are inadequate or become inadequate, the father may be called upon to supplement them by further contributions, notwithstanding the agreement by the mother releasing him from further costs or expenses.'' The interest of the children is the paramount consideration of the court, and the power to protect that interest was therefore clearly and wisely crystallized into section 5770, supra. (Compare, also, *Pearce* v. *Pearce,* 30 Mont. 269, 76 Pac. 289; *Brice* v. *Brice,* 50 Mont. 388, 147 Pac. 164; *Jewett* v. *Jewett,* 73 Mont. 591, 237 Pac. 702; Keezer's Marriage and Divorce, sec. 591, p. 413.)

The court was acting clearly within its power in making the modification, and in doing so did exactly what section 5770 contemplated with respect to the custody and care of the children, i. e., made an order ''after judgment.'' It is immaterial that the original decree of divorce failed to mention the children. (*Kane* v. *Kane,* supra, and California authorities, supra.)

Plaintiff's petition for a modification of the Besancon order upon which he has not yet been able to be heard, not only attacks the validity of the order, but also sets out positively his inability to comply with it. Presumably, the district court in making the modification of the original divorce decree passed upon the financial ability of plaintiff to meet the requirements thereof, as the order recites that testimony was adduced on behalf of both parties informing the court fully in the matter. Plaintiff did not obey the modified order, nor did he take an appeal therefrom; instead, and before contempt proceedings were instituted against him, he filed his petition for a modification of the modified order on the ground of his inability to comply therewith, and, as elsewhere disposed of, challenged the

jurisdiction of the court in making the modification of the original decree.

The district court of the Third Judicial District, to which all proceedings were transferred, took the position that plaintiff could not be heard on his petition until he had purged himself of the alleged contempt. Plaintiff failed to purge himself; his petition was denied, and subsequently he was tried for the alleged contempt and found guilty.

We find ourselves somewhat limited in the disposition of this application by reason of the fact that there is no record before us of any of the testimony from the district courts of either the third or fourth judicial districts. In our order to the Third Judicial District court .we requested a transcript of all the evidence taken in the matter of the contempt proceedings, but such record has not as yet been furnished. However, we doubt that it would be of controlling importance at this stage of the proceedings until after plaintiff has had an opportunity to be heard upon his petition for modification of the Besancon order.

Having here disposed of that portion of the petition attacking the validity of the modified decree, there is left only the matter of plaintiff's ability to obey the order made, which, of course, is the very basis for modification or denial thereof. A hearing on this matter may necessarily duplicate somewhat the procedure already had in connection with the contempt hearing; however, in the absence of the record, we are unable to tell just what testimony was elicited, and that which plaintiff may give in support of his petition for modification may or may not be the same as the defense he was allowed to make to the alleged contempt. The evidence in support of the petition to modify the decree would likely relate to a time subsequent to the filing of the petition, whereas that relating to the defense to the contempt charge would relate to the time prior thereto.

A hearing should have been allowed plaintiff on his petition for modification at the time of the contempt proceedings, as in *Woehler* v. *Woehler,* ante, p. 69, 81 Pac. (2d) 344, or at least prior to a final disposition of such proceedings, because logically, if plaintiff can successfully maintain his petition on

the grounds alleged, he might have a good defense to the contempt charge, and should also have the benefit of a modification of the decree as to future payments for the support of the ██ children. Involuntary and non-contumacious inability to obey would be a good defense to the contempt charge. (12 Am. Jur., sec. 72, p. 438; 15 Ann. Cas. 943; 76 A. L. R. 390.)

In the case of *Nixon* v. *Nixon*, 15 Mont. 6, 37 Pac. 839, a defendant sought to have a petition heard with relation to his inability to obey an order requiring the payment of alimony. In that case the court dismissed and refused to hear the petition, "for the reason that the defendant was in contempt of court, and could not be heard until he had purged himself of said contempt." That case presented a situation not unlike the one before us. Plaintiff here was proceeding as this court has often held he should proceed, that is, he was seeking a modification of an order which he asserted he could not obey. (*State ex rel. Murphy* v. *District Court*, 99 Mont. 209, 214, 41 Pac. (2d) 1113, and cases therein cited.) The court here, as in the *Nixon Case*, refused to hear plaintiff's petition for modification until he had purged himself of contempt. It is noticeable, also, that in that case petition was not made until after contempt proceedings had been heard; here, plaintiff's petition was made even before such proceedings were ever instituted,—in fact, a month after the order of modification was made. In *Nixon* v. *Nixon*, supra, the court said: "By filing his petition for such relief he tendered an issue of fact involving his faculty or ability to comply with the order of the court. The allegations of the petition could have been denied by the plaintiff in the case, and then the court could have proceeded to try the issue as to appellant's ability to pay the alimony and fee he had been ordered to pay. It seems hardly in consonance with reason or law to punish a man for not doing that which he has not the ability to do, or to punish him, without a hearing, for not doing that which he declares he is powerless to do." This case was followed in the rather recent case of *State ex rel. Murphy* v. *District Court*, supra, wherein the court said: "However, in this jurisdiction, and in New York, it is held that in such a

proceeding as this the defendant cannot purge himself of contempt by showing inability to pay, as his remedy is by an application to modify the order or decree for alimony on a change in his condition, the court having determined his ability on rendering the original decree.''

Under the authorities cited, it would seem that plaintiff ought at least to be heard on his petition for modification as to future payments, even though he be adjudged in contempt of an order as to past payments, which he alleges he is unable to obey—especially in view of his timely application for such modification. (Compare *Nixon* v. *Nixon,* supra.)

In the absence of the evidence, there is a presumption that ██ the court acted properly in finding plaintiff guilty of contempt. However, here plaintiff makes the allegation that there was no competent evidence showing that he was guilty of contempt. The motion to quash—in effect a demurrer—admits this allegation. This court ordered the lower court to stay all proceedings and to certify all the records and evidence in the matter, or show cause why such should not be certified. Respondents have seen fit not to produce the evidence here, and have shown no good cause for not so doing; hence, we shall not indulge the usual presumption that it was sufficient. On the contrary, respondents not having certified the record to us as commanded, we shall assume that there was none supporting the order.

It is our holding, therefore, that the Besancon order was lawfully made, and that the district court of the Third Judicial District erred in not hearing the plaintiff on his petition for modification, and in adjudging him guilty of contempt. The writ applied for will issue, commanding the respondent court and judge to set aside the order of contempt, and to hear plaintiff on his petition to modify the decree before finally adjudicating him guilty of contempt.

ASSOCIATE JUSTICES ANDERSON, MORRIS and ANGSTMAN concur.