STATE ex Rel. PAGANINI, Relator, *v.* DISTRICT COURT
ET AL., RESPONDENTS.

(No. 7,851.)
(Submitted July 21, 1938.   Decided July 25, 1938.)
[81 Pac. (2d) 697.]

Messrs. *Tansil & Bowen,* for Relator, submitted a brief; *Mr. John W. Bonner,* of Counsel, argued the cause orally.

*Mr. W. W. Mercer,* for Respondents, submitted a brief, and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

On April 15, 1938, Barbara Paganini obtained a decree of divorce from her husband, Valentine Paganini, and an award of alimony in the sum of $1,000, payable within sixty days after entry of the decree, and $50 per month, payable the first of each and every month. The decree recited that Valentine Paganini is the owner of 320 acres of land in Musselshell county; a lot with three small houses or shacks built thereon at Glasgow; miscellaneous machinery, tools and equipment used in connection with his business as concrete contractor and builder; a lot at Roundup with two houses built thereon renting for $9 and $12 per month, respectively; a six-acre tract of land near Roundup known as the Riverside property, with a six-room, modern house, outbuildings and a dancing pavilion thereon, renting for $40 a month; six tourist cabins adjacent to the Musselshell River; a new and modern six-room concrete-block house, located at 325 Yellowstone Avenue, Billings, renting for $42 per month, and which, when built a few years ago, cost in the neighborhood of $3,000.

Valentine Paganini failed to pay the $1,000 award of alimony within sixty days after the entry of the decree, and Barbara

Paganini made application to have him adjudged in contempt of court for failure to do so. After hearing, the court adjudged him guilty of contempt and imposed a fine of $200 and a jail sentence of five days. He thereupon applied to this court for an appropriate writ to have the judgment of contempt reviewed. His contention is that the record shows his inability to comply with the order of the court, and, therefore, that it does not sustain the court's order adjudging him guilty of contempt.

At the hearing the relator testified, in substance, that he is unable to comply with the court's order. He sought to show that much of the property found to be his by the decree of July 15, 1938, did not in fact belong to him, but belonged to his mother. He took no appeal from that decree and, while it is not binding upon his mother who was not a party to the action resulting in the decree, it will not do for him to say that he is not bound by it, since he took no appeal from it and did not in any other way seek to have it set aside or modified. In any event, the ownership of that property is not controlling on the question of the contempt of relator.

The evidence shows that on June 15, 1938, the last day on which he was required to make payment of the $1,000 alimony, he mortgaged his 1937 Dodge sedan to his daughter, Jean, to secure a note which he testified she has held since 1931. His daughter in 1931 was fourteen years of age. It further appears that relator on the same day borrowed $750 from Dominic Rodeghiero, and placed two mortgages upon his personal property consisting of two trucks, two concrete mixers, one concrete spray, one polishing machine, one block machine, and a ten-horse power gas engine. He testified that this money was used to pay a note to Victor D. Finco, due since October 17, 1937. This transaction was also consummated on June 15, 1938. His explanation for making these transactions was that his creditors were pressing him for payment.

The record also shows that in addition to the amount due to Barbara Paganini as alimony, relator and his mother owed her $1,600, principal and interest, on a joint promissory note.

The evidence was sufficient to warrant the court's order in adjudging the relator guilty of contempt. The record shows his ability to borrow money, and while it is entirely possible that he might not have been able to pay the entire amount of the alimony award, there is every reason to believe that he could have paid at least some of it. From the money which he borrowed he might have paid at least a part of the amount due to Barbara Paganini. His actions indicate a desire to avoid the payment of the alimony, rather than a bona fide attempt to comply with the court's order.

The rule stated in *State ex rel. Scott* v. *District Court,* 58 Mont. 355, 192 Pac. 829, has application here: "It is contended by counsel that a showing of inability to comply with the order is a good defense to a charge of contempt, citing *State ex rel. McLean* v. *District Court,* 37 Mont. 485, 97 Pac. 841, 15 Ann. Cas. 941. But the facts showing inability to comply, in the *McLean Case,* and on which the court held that the defendant was purged of contempt, were very different from those here presented; there the defendant had acted in good faith on an order of the court, and was in nowise responsible for the action of the court in later setting aside the original order. Here the court had adjudicated defendant's ability to pay, and he thereafter voluntarily encumbered the property disclosed to the court, from which he could have secured funds to, at least partially, comply with the order of the court. The case comes clearly within the rule laid down in the *Bordeaux Case,* cited [*State ex rel. Bordeaux* v. *District Court,* 31 Mont. 511, 79 Pac. 13], that upon failure to apply to the district court for a revocation or modification of the order, the writ of supervisory control will not lie to relieve a defendant from punishment for noncompliance with such order."

Relator contends, moreover, that the court erred in not hearing his application to modify the decree. This application was not made until the hearing on the contempt charge was in progress, and no notice was given to the opposing party or her counsel. The court, under the circumstances, did not abuse its discretion in refusing to hear the application at the

time the contempt proceeding was tried. This does not conflict with our holding in the case of *State ex rel. Floch* v. *District Court,* ante, p. 185, 81 Pac. (2d) 692, for there the application to modify was made before any contempt proceeding was instituted.

Whether the right to modify an order awarding alimony under ▇ section 5771, Revised Codes, extends to past due alimony is doubtful. (Compare *Woehler* v. *Woehler,* ante, p. 69, 81 Pac. (2d) 344.) At any rate, the respondent court has set ▇ the application for hearing, and even though the order may subsequently be modified, such modification would have no effect upon the question of relator's failure to make any effort to comply with its terms before modification and before the application for modification was made.

The order adjudging relator guilty of contempt was proper. The relief applied for is denied and the proceeding dismissed.

MR. CHIEF JUSTICE GODDARD and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.