NORMA HAY DANIELS, Plaintiff and Appellant, v. VERN
E. DANIELS, Defendant and Respondent..
No. 10971.
Submitted December 1, 1965. Decided January 13, 1966.
409 P.2d 824.

Lee Overfelt (argued), Billings, for appellant.

Cooke, Moulton, Bellingham & Longo, Bernard E. Longo (argued), Billings, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

Appellant, Norma Hay Daniels, by affidavit, sought relief in the district court of Yellowstone County against her divorced husband, respondent Vern E. Daniels, for his failure to pay overdue alimony amounting to $1,625.00. The Honorable E. E. Fenton ordered Mr. Daniels to show cause why he should not be held in contempt of court. Mr. Daniels answered, admitting the arrearage, but pleaded that he was then financially unable to pay monthly alimony in any amount. In support of that plea he filed a detailed affidavit reciting the legal history of the divorce and containing a statement of his financial condition. At the same time he filed a petition for modification of the divorce decree praying vacation of further alimony payments. Appellant challenged this petition by a motion to quash on grounds that respondent had not shown by his affidavit that he should not be held in contempt, but in reality had shown prima facie his ability to pay at least some of the alimony during the time involved, therefore, he should not be heard on his petition of modification. The alleged prima facie showing of ability to pay was respondent's affirmation that he had been financing his family needs for the immediate past year by borrowing an amount totaling nearly $840.00 per month. The Court denied

the motion to quash and permitted the respondent to adduce evidence supporting his petition. After hearing the evidence and arguments of both sides the court dismissed its order to show cause and modified the divorce decree as respondent requested by vacating future alimony payments. The court, retaining jurisdiction of the matter, made its order subject to appellant's reserved right to petition for reinstatement of alimony should the financial circumstances of respondent improve and held specifically that the decision did not affect the obligation of the respondent to pay the $1,625.00 arrearage, leaving a schedule of payments to be worked out between the parties.

It is the appellant's position that Mr. Daniels should have been held in contempt because the evidence does not prove that his financial condition had worsened "at the time of the petition for modification in October 1964 as compared to the date of modification in April of 1962." Consequently, the appellant cites as error the court's failure to enter a contempt order against respondent for non-payment of alimony, its allowance given respondent to present evidence supporting his modification petition, and its action modifying the divorce decree by vacating future alimony payments.

It has long been the law in this state that to avoid being held in contempt for failure to pay alimony, it is the duty of the defendant, "for his own protection, to go into court, relate the circumstances, and pray for a revocation or modification of the order directing him to pay alimony." State ex rel. Bordeaux v. Second Judicial District Court, 31 Mont. 511, 79 P. 13; State ex rel. Murphy v. Second Judicial District Court, 99 Mont. 209, 41 P.2d 1113. See also, State ex rel. Scott v. District Court, 58 Mont. 355, 192 P. 829; Nixon v. Nixon, 15 Mont. 6, 37 P. 839; State ex rel. Nixon v. Second Judicial District Court, 14 Mont. 396, 40 P. 66. A hearing should be allowed on a petition for modification at the time of contempt proceedings, because logically, if the petitioner can successfully maintain his petition on the strength of the evidence he presents, he might have a good defense to the contempt charge. "Involun-

tary and non-contumacious inability to obey would be a good defense to the contempt charge." State ex rel. Floch v. District Court, 107 Mont. 185, 193, 81 P.2d 692, 696; Woehler v. Woehler, 107 Mont. 69, 81 P.2d 344. "It seems hardly in consonance with reason or law to punish a man for not doing that which he has not the ability to do, or to punish him, without a hearing, for not doing that which he declares he is powerless to do." Nixon v. Nixon, 15 Mont. 6, 37 P. 839. If he claims to be unable to make the payments required by the divorce decree, he may be able to show sufficiently that the decree should be modified in those particulars. Under our law the final judgment granting alimony "may be enforced by the court by such order or orders as in its discretion it may from time to time deem necessary, and such order or orders may be varied, altered, or revoked at the discretion of the court." R.C.M.1947, § 21-137. "Where a divorce is granted for an offense of the husband, the court may compel him * * * to make such suitable allowance to the wife for her support during her life, or for a shorter period, as the court may deem just, having due regard to the circumstances of the parties respectively, and the court may, from time to time, modify its orders in these respects * * *." Section 21-139. Thus, we see that under our law there is no guarantee of an annuity to a divorced wife. The trial judge in the ambit of his discretion must weigh the relative circumstances of the parties in light of the evidence presented in determining whether conditions demand a variation, alteration, or revocation of alimony and support payments. We will look critically at that determination only if it is shown to be unsupported by the evidence before the trial court of the changing situations of the parties. The delicate decision is one of balancing the needs of the wife for support and maintenance against the husband's honest ability to provide.

In her citations of error the appellant in effect is asking us to analyze the evidence and thereby, conclude as she does, that the respondent failed to prove his honest inability to pay. The evidence shows that the parties to this action, Norma Hay and

Vern E. Daniels, were married in June 1939. A daughter, whom they named Elaine, was born to them. In August, 1946, when the child was five years old, Mrs. Daniels was granted a divorce on grounds of extreme cruelty in proceedings which Mr. Daniels did not contest. In fact, by written entry of appearance he agreed to a judgment against him. By the divorce decree custody of Elaine was given to her mother and a property settlement between the parties was approved by the court. That property settlement gave Mrs. Daniels $400.00 a month alimony and child support, a 1947 Cadillac automobile, a home valued from $12,500.00 to $20,000.00 located in the Highland Park section of Billings, and $3,000.00 cash for furniture. In addition, Mrs. Daniels was made custodian of government bonds worth $6,000.00 which Mr. Daniels had purchased for Elaine. Mr. Daniels estimated his financial affluence at the time of the divorce at $100,000.00 with yearly income of $26,000.00.

In October 1951, on petition of Mr. Daniels the court reviewed the divorce decree and found that in the best interests of Elaine, custody should be transferred to her father. By the same order the $400.00 a month alimony and support payment was reduced to a $250.00 a month alimony payment. Further modification of the alimony payment to $125.00 a month was ordered on Mr. Daniels' petition in April 1962, the court finding that the reduction had been stipulated by the parties and was warranted by Mr. Daniels', then existing, financial circumstances.

Throughout the years from August 1946 to January 1963, Mr. Daniels faithfully satisfied his alimony and support obligations. From January to September 1963, he paid nothing. In September 1963, Mrs. Daniels agreed to accept $500.00 as full satisfaction for the $1,000.00 back payments owing her, and an acknowledgment to that effect was entered into the court record. She has received no payment since September 1963.

Sometime between 1946 and 1951, Mr. Daniels remarried.

He and his present wife adopted three children, a girl in 1951, a girl in 1952, and a boy in 1954. In 1964 at the time of the proceedings, these children were ages 13, 12 and 10, respectively. In addition they have raised Elaine since 1951. Mrs. Daniels has never remarried and has had no dependents since losing custody of Elaine in 1951.

The record shows Mrs. Daniels to be the owner of her home in Billings, unencumbered and with taxes fully paid, of the 1947 Cadillac given her in the property settlement, of three of the original six $1,000.00 bonds placed in her care for Elaine, of some stocks, and of a cash balance in the bank of $5,400. From 1946 to 1963 she has received between $80,000.00 and $90,000.00 in cash and property from Mr. Daniels under the divorce decree, which on the yearly average amounts to between $4,700.00 and $5,300.00. Although 30 or 31 years old when divorced she has never sought employment, even though she had training from a business college and, except for a back ailment, has good health. At the time of the present action she was 49 years old.

On the other hand, even though the record shows Mr. Daniels to be a man of some financial dexterity and pluck, it presents a chronical of rambling business interests which from 1961 to 1964 were dissipated to the brink of near financial disaster. His books of account produced by his accountant soberly testified to net losses for 1963 of over $29,000.00 and for the first nine months of 1964 of over $12,000.00. These financial reverses required him to sell certain properties and to mortgage his home and automobile to meet the necessary personal expenses of his family. It appeared that he had even exhausted this source of financial support by the time of these proceedings. His banker, when asked if he would be disposed toward further loans to Mr. Daniels at the present time, replied, "We would require additional collateral and I don't see where it would come from." The $840.00 which the family monthly expended for personal necessities were broken down roughly to: groceries, $150; dentist, $40; doctor, $25; utilities, $42; pharmaceuticals, $55; insurance, $133; house, $167; car, $127; Sears

account, $30; Penney's account, $10; school lunches, $34; other clothing, $30. The present Mrs. Daniels was completing a course in beauty school after which she intended to secure employment to aid in meeting the family upkeep and maintenance.

The appellant makes two arguments which we mention not for their puissance but for their curious bent. Her first line of reasoning is based upon State ex rel. Paganini v. District Court, 107 Mont. 195, 81 P.2d 697, in which this court held that ability to borrow under some circumstances may disprove an honest inability to pay alimony. Appellant maintains that inasmuch as respondent has shown ability to borrow for his family needs $840.00 per month, "it seems incredible that there was no attempt to pay at least a portion of the alimony due." Therefore, she concludes, that by law the court must hold the delinquent ex-husband in contempt. A careful reading of Paganini, supra, however, projects but one conclusion: the trial court must exercise its discretion soundly when deciding upon the particular facts of each case before it. Each fact must be weighed for its significance in the scheme of total facts presented; no one fact is *per se* controlling. The controlling features of Paganini, supra, are summed up in the court's sentence, "His actions indicate a desire to avoid payment of the alimony, rather than a bona fide attempt to comply with the court's order." We note in passing that Mr. Daniels had been complying for seventeen years to the tune of $80,000.00 to $90,-000.00. There is no inconsistency between Paganini, supra, and the Woehler case, supra, and the Floch case, supra, decided by the same court at the same term. Each of these cases follows our law that on review we look to the exercise of sound discretion of the trial court.

Appellant's second line of reasoning concludes that the evidence failed to prove a substantial change in respondent's financial circumstances between April 1962, and October 1964. She bases this conclusion on the premise that respondent failed to show as a matter of record his economic conditions or earn-

ing capacity at the time of the last modification of the decree in April, 1962, and that his 1964 financial statement and balance sheet in itself indicates nothing as far as conditions in October 1964, being worse than in April 1962. Therefore, the judge had nothing comparative on which to base his decision and abused his discretion thereby. Furthermore, to bolster this argument, she constructs the curious premise that even if it is assumed that the $29,000.00 loss shown for 1963 represented respondent's deteriorating financial conditions as of April 1962, "we must admit that conditions had, if anything, improved vastly for Mr. Daniels by October 23, 1964, the date of petition of modification based on changed circumstances," since he claimed a loss for 1964 of only $12,000.00.

We agree that a "decree concerning alimony or maintenance is conclusive as to the circumstances existing when it was entered, and the court will not make a new order where the facts at the time of the application for a change are substantially the same as those that were previously adjudicated." 18 A.L.R.2d 18. See Brice v. Brice, 50 Mont. 388, 147 P. 164. But this record shows, as the trial court found, a steady deterioration and evaporation of Mr. Daniels' financial resources from 1961 to 1964, with an ever-increasing obligation on him toward three healthy, growing children who have ever increasing needs. The trial court's decision to modify the decree and to dismiss its order to show cause are supported by the evidence.

Judgment affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, DOYLE and CASTLES concur.