No. 12083

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

RUTH A. MOVIUS,

Plaintiff and Appellant,

-vs-

ARTHUR J. MOVIUS, JR.,

Defendant and Respondent.

---

Appeal from: District Court of the Thirteenth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Scott, Scott and Baugh, Billings, Montana.
Jeffrey J. Scott argued, Billings, Montana.

For Respondent:

Michael J. Whalen argued, Billings, Montana.

---

Submitted: February 16, 1972

Decided: MAY 1 - 1972

Filed: MAY 1 - 1972

Thomas J. Kearney
Clerk

Honorable Jack D. Shanstrom, District Judge, sitting in place of Mr. Justice Wesley Castles, delivered the Opinion of the Court.

This appeal and cross-appeal arises out of two separate actions filed in the district court of the thirteenth judicial district, in and for the county of Yellowstone, both of which were consolidated in the lower court. The source of both actions is a divorce decree entered between the parties on August 8, 1956. The decree incorporated by reference a property settlement agreement, the terms of which form the basis of this appeal.

Appellant here and plaintiff below is the first wife of respondent who is also a cross-appellant. The parties in this opinion will be referred to respectively as plaintiff and defendant.

The matters presently before the Court were instituted by plaintiff in the divorce action to enforce certain terms of the property settlement agreement alleged to have been breached by defendant. Plaintiff at the same time filed an original complaint in specific performance to compel compliance with the same agreement. The reason for this duplication in the lower court is not entirely clear. In any event, the issues in each case are identical, and will be so treated here.

Plaintiff asserts six issues for review; defendant cross-appeals on the court's requirement that he pay any alimony at all. All issues in varying degrees go to the district court's construction of the property settlement agreement. It is most convenient to discuss the issues in conjunction with the evidence.

The important facts are not in dispute. At the time of their divorce in 1956, the parties agreed in writing on matters of property settlement, alimony and child support. The pertinent provisions of their agreement read as follows:

> "6.  Beginning September 1, 1956, First Party will
>      make the following monthly payments to Second
>      Party:
>
> "(a)  The sum of $632.00 per month.
>
> "(b)  The sum of $150.00 per month
>       for the support of Arthur J. Movius, III.
>
> "(c)  The sum of $150.00 per month for the
>       support of David Lewis Movius.

"(d)  The additional sum of $150.00 per month for
        the support of each of said sons during the
        months of each year each is attending college.

"Second Party agrees that from the payments specified
under (b), (c) and (d), she will care for and maintain said
children until they respectively complete their college
education; provided, however, that if the sums specified
under (b), (c) and (d), together with other income, if any,
received by said children should be inadequate to pay for
the maintenance of said children and their college expenses,
First Party will, upon satisfactory proof that the afore-
said sums are inadequate for such purposes, make such addi-
tional payments as may be reasonably necessary to permit
each of said children to maintain the living standards
prevalent at the college which he is attending.

" * * *

"If the adjusted gross income of the Party of the First
Part is less than $35,000.00 for any year, the payments
to Second Party for the succeeding year under subpara-
graphs (a), (b), (c), and (d) shall be decreased by 4
per cent of the difference between the adjusted gross
income and $36,500.00.  If the adjusted gross income of
First Party is more than $38,000.00 for any year, the
payments to Second Party for the succeeding year under
subparagraphs (a), (b), (c) and (d) shall be increased by
4 per cent of the difference between $36,500.00 and the
adjusted gross income."

This extensive quotation forms the basis of plaintiff's contentions

on appeal.  She claims first that the district court should have awarded her

the sum of $6,750.00 for additional expenses incurred by her for the college

education of the two boys over and above defendant's child support payments.

This the court refused to do for the reason that plaintiff produced no proof

as to the character of such expenses, their amount or their necessity.  In

short, the trial court found that plaintiff failed to show the "satisfactory

proof" required by paragraph 6 (d) to create the extra obligation.  Likewise,

it appears during the period plaintiff claims the additional support that

defendant gave direct financial aid to the children while they were enrolled

in college.  We agree that plaintiff's claim for additional education expenses

is not sustained by the evidence.  The children being now emancipated and

educated, there is no further issue on child support.

Plaintiff's next claim has to do with her alimony rights.  Defendant's

income is down substantially from its level at the time of the divorce.  Apply-

ing the 4 percent reduction formula provided in the agreement, the district

- 3 -

court denied plaintiff in entirety her right to alimony in 1969 and reduced it substantially for 1970. In doing so, the court applied the 4 percent adjustment figure on a monthly rather than an annual basis. The effect of this was to give defendant the benefit of 48 percent (4 percent per month times 12 months) of any reduction in income below $36,500 as an offset against alimony. Plaintiff urges this was error, that the 4 percent reduction factor should have been applied annually. The property settlement agreement does not state which interpretation is correct. Both parties testified in favor of the interpretation most favorable to each. In concluding as it did, the district court found:

> "Referring to the agreement as a whole, there is discernible an intention of the parties to settle their affairs on an approximate equal sharing basis. The division of real and personal property interests, on the terms provided, demonstrates this. An analysis of paragraph 6 shows the existence of a similar objective with respect to Plaintiff's entitlement to share in the Defendant's future income. By keying the amount of support payments to the rise and fall of Defendant's income, when it varies more than $1,500.00 either way from $36,500.00, an adjustment figure of 4% per month approaches an equal division of income. Although the agreement provides for an increase or a decrease of payments 'for the succeeding year', it is the payments specified under subparagraphs (a), (b), (c) and (d) which are adjusted and they are monthly payments. On this point the Defendant must prevail."

While we recognize plaintiff's argument that a contrary decision might have been reached, we cannot say as a matter of law that the district court misconstrued the agreement. It was forced to resolve an ambiguity, and there are sound reasons to support the decision reached. The court was compelled to look at the overall intent of the parties by established principles of contract construction, such as stated in Steen vs. Rustad, 132 Mont. 96, 313 P.2d 1014:

> " * * * It is well established that a court, in interpreting a written instrument, will not isolate certain phrases of that instrument in order to garner the intent of the parties, but will grasp the instrument by its four corners and in the light of the entire instrument, ascertain the paramount and guiding intention of the parties. * * *"

- 4 -

Plaintiff next urges that the court, under the same formula applied above, should have increased rather than decreased her alimony. This argument is based on the fact that the defendant, a physician and surgeon practicing in Billings, sold his interest in his medical partnership (The Billings Clinic) in 1967 for $80,000, payable over two years. This, urges plaintiff, should have been includable as part of defendant's "adjusted gross income" for those years, since it was so listed on his income tax returns. The trial court declined to accept this contention and excluded the sale proceeds from defendant's income for purposes of determining alimony. In so holding, the court emphasized the provisions of paragraph 2 of the property settlement agreement, reading as follows:

"The Party of the First Part shall retain and own all property standing in his name, consisting of the following:

" * * *

"(b) His interest in the assets and accounts receivable of The Billings Clinic."

To adopt plaintiff's position would operate to vest her with an interest in property that was clearly granted to defendant years before in the agreement. The district court reasoned and we agree that to include the sale proceeds of defendant's separate property for alimony computation would negate the express intention of the parties as above quoted. Plaintiff in 1956 relinquished all interest in and to The Billings Clinic. She should not now be heard to reassert it.

In conjunction with these proceedings in the lower court, the defendant petitioned to henceforth completely eliminate all alimony requirements. His petition was based upon an alleged change in the financial circumstances of the parties. The trial court complied to the extent of reducing plaintiff's alimony to $132 per month. Both parties appeal from this determination.

There is no issue raised as to the authority of the district court to make the modification. Whether the provisions of the property settlement agreement were contractual or decretal is not argued. The question is whether

the court abused its discretion in ruling as it did. The standard to be applied in such cases is stated in Daniels v. Daniels, 147 Mont. 57, 409 P.2d 824, as follows:

" * * * Thus, we see that under our law there is no guarantee of an annuity to a divorced wife. The trial judge in the ambit of his discretion must weigh the relative circumstances of the parties in light of the evidence presented in determining whether conditions demand a variation, alteration or revocation of alimony and support payments. We will look critically at that determination only if it is shown to be unsupported by the evidence before the trial court of the changing situations of the parties. The delicate decision is one of balancing the needs of the wife for support and maintenance against the husband's honest ability to provide."

Under the facts here, we do not find the necessary abuse of discretion. For the ten years following the divorce, defendant's income ranged generally between $36,500 and $45,000 annually. Then, with the termination of his partnership interest in The Billings Clinic in 1967, defendant's income dropped to $19,500 the following year. It rose to $26,500 in 1969 and was not more than that in 1970. At the time of the hearing, defendant was $10,000 in debt with no assets beyond accounts receivable from his medical practice. He had exhausted the receipts from the sale of the Clinic in setting up his new practice, making alimony payments and meeting living expenses.

Plaintiff, on the other hand, had accumulated a net worth of approximately $137,000 and in addition was a 50 percent beneficiary to the proceeds of an estate appraised at $102,000 at the time of hearing. Although her income earning capacity was in dispute due to injuries sustained in a bicycle-pedestrian accident, we cannot disagree with the district court's holding that she was financially able to provide for herself.

The fact that defendant used a $20,000 inheritance from his sister in 1969 to meet mortgage payments on a home owned by his present wife is not in our opinion sufficient justification to overturn the lower court's ruling. Again we are dealing with broad discretionary guidelines, and whether we agree or disagree with the district court is not the issue. We are not able to state

as a matter of law that the trial judge abused "the ambit of his discretion."
Daniels, supra.

What we have said above applies equally to both plaintiff's appeal and defendant's cross-appeal on the subject of future alimony. The ruling is affirmed. The $132 monthly payments do no more than pay the premiums on an insurance policy carried by plaintiff (with the children as contingent beneficiaries) on defendant's life. Such insurance policy was referred to in the property settlement agreement. There is no dispute that out of the $632 monthly alimony payments called for therein, the sum of $132 was set aside as the insurance premium. This being the fact, we cannot dispute the district court's finding:

> "Considering the purposes behind the creation and main-
> tenance of this insurance policy, it should be continued
> in effect.
>
> "The payment to plaintiff, therefore, should be reduced
> to the sum of $132.00 per month from and after March 6,
> 1970."

The final issue for review is whether the district court erred by dismissing plaintiff's claim for one-half the value of certain Montana State College revenue bonds owned by the parties at the time of the divorce. Paragraph 3 of the property settlement agreement provides as follows:

> "Each of the parties shall be entitled to an undivided
> one-half interest in all stocks and bonds standing in
> the names of the parties hereto as joint tenants."

There is much argument whether the bonds were owned by the parties as joint tenants or, as contended by defendant, were bearer bonds. The district court held they were not jointly owned. We need not resolve that issue, for it is undisputed that defendant cashed the bonds in 1957 and retained the proceeds. He did so in opposition to a demand made by plaintiff's counsel in 1957 or 1958 that he pay over one-half the proceeds to her.

In Montana, an action upon the provisions of a written contract must be commenced within eight years or be barred by the Statute of Limitations. Section 93-2603, R.C.M. 1947. Plaintiff here waited nearly 14 years after the alleged breach became known to her.

The judgment of the district court is affirmed.

- 7 -

_[signature]_

Hon. Jack Shanstrom, district judge, sitting
in place of Mr. Justice Wesley Castles.

We concur:

_[signature]_

Chief Justice

_[signature]_

_[signature]_

_[signature]_

Associate Justices