MAXINE WILLIAMS, petitioner,

*v.*

HENRY A. WILLIAMS, defendant.

[Decided August 9th, 1934.]

642

*Messrs. Lum, Tamblyn & Colyer (Mr. Ralph E. Lum),* for the petitioner.

*Mr. Henry A. Williams, pro se,* and *Mr. Filbert L. Rosenstein,* for the defendant.

CAMPBELL, A. M.

This is an application for modification of a decree for permanent alimony advised October 30th, 1933, by Vice-Chancellor Fielder. The decree orders, among other things, payment of $500 per month to Mrs. Williams for her support and maintenance and that of the child of the marriage of the parties hereto. The petition prays for modification of only that part of the decree as directs payment of said monthly sum. Mrs. Williams and defendant entered into a written agreement for maintenance of May 16th, 1932, being prior to the entry of the final decree in their divorce proceedings, which provides, among other things, for the payment of approximately $696 per month for the support and maintenance of Mrs. Williams and said child.

Mrs. Williams contends that defendant's application for modification should be denied because it is impossible to know when any reduction in his income manifested itself so as to entitle him to relief; that he comes before this court without having acted in good faith; that his conduct has been wholly inequitable, and that the doctrine of "unclean hands" precludes him from consideration.

This court, in *Fornataro v. Atlantic Coast Building and Loan Association, 10 N. J. Mis. R. 1248; 163 Atl. Rep. 240* took judicial notice (in 1932) of the stress of the financial situation. In *James Mitchell, Inc., v. Kreuger's Unknown Executors, 10 N. J. Mis. R. 1176; 163 Atl. Rep. 10,* it was held that "courts may take judicial notice of facts that may be regarded as forming part of common knowledge of person of ordinary understanding and intelligence generally known within limits of jurisdiction." This branch of the court takes

judicial notice of the fact that the stress of the financial situation is acute, particularly in so far as the professions are concerned. Furthermore, the present practice of this court is to relax the strict application of the rules heretofore applying to petitions for modification of alimony decrees, because of the known inability of alimony payers in general to fully comply with the standards heretofore established. In other words, a defendant, even though he be in contempt, will not be denied his right to petition if he can show *bona fides* in his past endeavors to comply with the order which he seeks to have modified; the power of contempt is presently used sparingly and the doctrine of "unclean hands" is tempered with the exigencies of to-day's financial situation.

Consequently, in so far as defendant's arrearages are concerned this court will not deny him the right to have his petition considered; such arrearages will not abate and a modified order will be advised if the circumstances warrant. All the court requires is proof that the defendant has demonstrated an honest desire, and his inability, to comply with an existing alimony order.

That this court may entertain a wife's petition for alimony and support and maintenance of children of the marriage, is elementary, and that right, agreement or no, is inherently hers. In *Sobel* v. *Sobel, 99 N. J. Eq. 376; 132 Atl. Rep. 603,* the court stated: "One of the principal duties arising out of the marital tie is the duty of the husband to provide suitable support and maintenance for his wife. This is a common law duty arising out of the status of wedlock. The obligation to support and maintain the wife does not arise out of any contract between the husband and wife to that end, but out of a state policy, recognized and enforced by the civil and common law."

The Divorce act (Revision of 1907—*2 Comp. Stat. 1910 p. 2035 § 25,* amended by *P. L. 1933 ch. 145*), provides:

"Pending a suit for divorce or nullity, or after decree of divorce, it shall be lawful for the court of chancery to make such order touching the alimony of the wife, and also touching the care, custody, education and maintenance of the children, or any of them, as the

circumstances of the parties and the nature of the case shall be rendered fit, reasonable and just, * * *; orders so made may be revised and altered by the court from time to time as circumstances may require."

Mrs. Williams having applied for and obtained a decree of this court fixing the amount of permanent alimony, it is the plain intention of the last sentence of section 25, *i. e.,* "orders so made may be revised and altered by the court from time to time as circumstances may require," that the right to apply for modification of any such decree is not exclusively hers.

In *Rigney* v. *Rigney, 62 N. J. Eq. 8; 49 Atl. Rep. 460,* it was held: "The statutory jurisdiction to vary the amount of alimony from time to time, which is found in this legislation (*2 Gen. Stat. p. 1269 § 19*), will not, in my judgment, be ousted because the decree omitted to reserve to the parties the right to apply for such variation. The defendant in the original action, therefore, had a right to apply for and urge the reduction of the amount of alimony allowed by the decree, upon proof of changed circumstances and conditions." This rule seems to have been followed also in *Greenberg* v. *Greenberg, 99 N. J. Eq. 461; 133 Atl. Rep. 768:* "The husband's ability to pay for the support of his wife and the justice of the wife's enjoyment of her right are subject to the change of circumstances which a court cannot anticipate, and hence complete justice requires that the court's power to act shall be kept open so long as it shall be needed to direct just variation." Consequently, such portion of the decree sought by this proceeding to be modified, as restricts that right exclusively to Mrs. Williams, is untenable.

It has frequently and most persistently been urged by the bar, upon numerous applications before me, that permanent alimony should be settled at one-third of the husband's income for the wife's support, and when she has been awarded custody of minor children the amount should equal, and in some instances exceed, one-half of such income. In many cases one-third of a small income is wholly insufficient for the proper support of the wife. On the other hand, where the husband possesses large means, one-third would be grossly

excessive and in many instances would far exceed what the wife would have received if she and her husband were living together. While this rule has been frequently applied in reported cases, I do not find, however, any substantial reason for its consideration as an unvarying criterion. Chancellor Pennington laid down a most sensible and equitable rule in *Richmond* v. *Richmond, 2 N. J. Eq. 90,* substantially to this effect: There is no fixed general rule by which to graduate the allowance for alimony, but every case must depend much on its own peculiar circumstances, and indeed it would be impossible to frame one which would work justly in all cases. Certain rules have indeed been laid down from time to time, so as to form some guide; still every case must depend very much on its own peculiar circumstances. Nor will it answer to be guided by the actual wants of the complainant. They may exceed the amount which the claims of equal justice to both the parties may warrant, and in fact might work an injury to the true interests of the whole family, by consuming the estate and breaking down all incentives to exertion on the part of the defendant. It will be noted that while Chancellor Pennington remarked that certain rules had been laid down from time to time, so as to form a guide, he ignored them completely in framing the foregoing opinion in 1838; he based his conclusions upon the premises that "every case must depend very much on its own peculiar circumstances," and that an amount should not be fixed that "might work injury to the true interests of the whole family, by consuming the estate and breaking down all incentives to exertion on the part of the defendant." While this rule was laid down more than ninety-five years ago, I cannot conceive that a more equitable one could be framed to meet the requirements of modern times.

In *Boyce* v. *Boyce, 27 N. J. Eq. 433,* decided in 1876, Chancellor Runyon stated, after taking into consideration the situation and station in life of the parties, and the amount of defendant's property and income: "This sum will provide for her a support and maintenance equal, in all respects, to that which, taking into consideration the amount of his income, she had a right to expect at the hands of her husband had she continued to live with him."

In *Lynde* v. *Lynde, 64 N. J. Eq. 736; 52 Atl. Rep. 694,* the court of errors and appeals held: "The amount of the allowance, the method of its enforcement, the method of its application, and the security to be exacted of the husband for its payment, are all confided to the discretion of the Chancellor; and he is at liberty to increase or decrease the amount of the alimony from time to time according to the circumstances of the case. * * * The purpose is to require the husband to pay to the wife, periodically, such sum as, in view of his circumstances and the necessities of the wife, will be a reasonable fulfillment of his continuing duty to support her. The purpose is not to enrich the wife."

In *Dietrick* v. *Dietrick, 88 N. J. Eq. 560; 103 Atl. Rep. 242,* decided in 1918, the court of errors and appeals, after stating that the measure of permanent alimony is usually about one-third of the husband's income, seems, however, to have completely disregarded that suggestion when it concluded: "The amount is not fixed solely with regard, on the one hand, to the actual needs of the wife, nor, on the other, to the husband's actual means. There should be taken into account the physical condition and social position of the parties, the husband's property and income, including what he would derive from personal attention to business, and also the separate property and income of the wife. Considering all these, and any other factors bearing upon the question, the sum is to be fixed at what the wife would have a right to expect as support, if living with her husband."

In the more recent case of *Robins* v. *Robins, 106 N. J. Eq. 198; 150 Atl. Rep. 340,* decided by the court of errors and appeals in 1930, another element is considered, viz.: "At all events, in determining the matter [amount?] of alimony to be, awarded, the court may take into consideration not only the husband's property and income, but also his capacity to earn money from personal attention to business. It it were otherwise, a husband, by deliberate intent or disinclination to work, might defeat or avoid his marital obligation of support." Excessive alimony is not to be awarded against a defendant husband for the purpose of punishing him for the wrongs he may have committed. This rule was established in

*Amos* v. *Amos, 4 N. J. Eq. 171:* "The court will * * * hold out no inducement for the oppression of the husband."

It seems, therefore, that the practice of allowing one-third and one-half, respectively, of the husband's income for permanent alimony and maintenance of minor children is not an established rule in this state, but that the equitable basis of measurement requires consideration of the following factors: The husband's property and income. *Robins* v. *Robins, supra.* The husband's capacity to earn money from personal attention to business. *Robins* v. *Robins, supra; Dietrick* v. *Dietrick, supra.* The separate property and income of the wife. *Dietrick* v. *Dietrick, supra.* The sum the wife would have a right to expect of her husband had she continued to live with him. *Boyce* v. *Boyce, supra; Dietrick* v. *Dietrick, supra.* The sum to be such as will not enrich the wife. *Lynde* v. *Lynde, supra.* The award to be of such amount as to hold out no inducement for the oppression of the husband. *Amos* v. *Amos, supra.* The actual wants of the wife considered with equal justice to both the parties, to the end that no injury will result to the true interests of the whole family by consuming the estate and breaking down all incentives to exertion on the part of the defendant. *Richmond* v. *Richmond, supra.*

The defendant has remarried. His wife is *enceinte.* She also has a child by a former marriage whom defendant has recently adopted. He is a lawyer and formerly enjoyed a lucrative practice. Subsequent to the execution of the agreement for maintenance he was forced into bankruptcy and thus stripped of his entire estate. He alleges that his income has become so seriously reduced as to render it impossible for him to make the $500 monthly payments; that that sum represents approximately two-thirds of his net income, based on the calendar year 1933; that the payment thereof will not leave a balance of income wherewith to provide suitable clothing, food, shelter and other necessities of life for his present family and himself. He says that he recognizes his first duty to his former wife and the child of his marriage to her. This is as it should be because the fact that he has remarried, and thus assumed new obligations,

cannot be successfully urged by him as a reason for modification. *Cooper* v. *Cooper, 103 N. J. Eq. 416; 143 Atl. Rep. 559; Robins* v. *Robins, supra.*

In defendant's memorandum he indicates his net income for the calendar year 1933 to have been, in round numbers, $10,000. In his petition he discloses that he has been required to pay annually, as a continuing obligation, approximately $468 on account of a note of $15,000 which represents the deficiency on a mortgage foreclosure. In addition thereto he is obligated in the annual sum of approximately $440, representing interest on a note endorsed by his mother which he is morally compelled to continue, irrespective of completed bankruptcy proceedings against him, for the protection of his mother. These two items, aggregating approximately $900 annually, are not allowable deductions from defendant's gross income in proceedings of this nature. Consequently, his disclosed net income should be increased by $900, resulting in a corrected net of $10,900.

The defendant avers that he is living modestly and that he has effected every possible economy. He cites the loss of specific retainers that have tended to matrially decrease his income. In respect to the latter, the rule is that the sum allowed for alimony should be predicated upon other than favorable engagements. *Furth* v. *Furth, 39 Atl. Rep. 128.*

It is evident that Vice-Chancellor Fielder gave consideration to the agreement for maintenance in advising the decree sought to be modified by this application. On the return of the order to show cause, however, and from which that decree resulted, no one appeared for the defendant. Neither did he undertake to give an account of his property before the vice-chancellor nor submit himself to examination there. But failure of the defendant to thus appear, account and subject himself to examination does not prejudice his rights in the matter *sub judice.* In this respect the court stated in *Rigney* v. *Rigney, 62 N. J. Eq. 8; 49 Atl. Rep. 460:* "Such an application is not one involving a review of the propriety of the decree as made."

While the agreement for maintenance between the parties is not at issue in the matter *sub judice,* the court may, how-

ever, resort thereto on an application of this nature, and on which application the wife may legitimately ask the court to recognize the agreement as a basis for its award, and the court will recognize it or not as it thinks proper. *Apfelbaum* v. *Apfelbaum, 111 N. J. Eq. 529; 162 Atl. Rep. 543.* Recognition of the agreement is necessary to the extent of its provisions for payment of sums in addition to the annual item for maintenance and to the payment of which sums defendant has offered no objections.

Mrs. Williams owns and occupies the homestead known as 107 Clinton avenue, Montclair. This homestead was, apparently, provided for her by the defendant. It is encumbered with a mortgage of $18,000. A collateral note for $10,000, made by Mrs. Williams, represents a portion of the purchase price. The annual taxes approximate $850. Interest on the mortgage and note aggregate $1,680 per annum. Life insurance for the benefit of Mrs. Williams requires payment by defendant of annual premiums approximating $1,334. These items total $3,864 yearly, or $322 per month. Deducting this sum from defendant's net income of $10,900 leaves a balance of $7,036 available for the maintenance of Mrs. Williams and the child and defendant and his family, respectively.

In *Habble* v. *Habble, 99 N. J. Eq. 53; 132 Atl. Rep. 113,* Vice-Chancellor Backes held that a divorced wife is entitled to live in the homestead provided by her former husband in the same style as if they were living together, and she need not cheapen her course of living unless his means require it. Interest and taxes on the home occupied by Mrs. Williams approximate $200 per month. Considering defendant's net income for 1933 of $10,900, I am doubtful that this sum ($200) would be expended monthly for use and occupation of a homestead if the parties were now living together. Defendant has, however, obligated himself by said maintenance agreement to pay these items. Consequently, consideration thereof must be had in determining whether or not the decree should be modified.

Defendant's petition does not disclose whether interest and taxes are in arrears on the home of Mrs. Williams. His

memorandum, however, indicates that he defaulted the August, 1933, interest payment as well as the 1933 taxes. It is reasonable to assume that if the payment of $500 monthly to Mrs. Williams for her maintenance is beyond the present ability of the defendant to earn, that the occupancy of her homestead as well as her future participation in defendant's life insurance are presently imperiled; that default in payment of these essential items will result in a future loss to her of far greater proportions than could possibly be compensated by a present continuance of the $500 monthly payments.

From the facts before me, and reviewing all of the circumstances, I am of the opinion that equity and good conscience warrant modification of the decree to $3,900 per year, or $325 per month. Considering defendant's present earning capacity I am doubtful whether Mrs. Williams would receive, much less expect, this monthly sum for her personal and household necessities, as well as for the maintenance of her daughter, were she and the defendant now living together. There is nothing before me to indicate that Mrs. Williams possesses separate property or income.

It is not contended that defendant is presently capable of earning more money than his 1933 statement discloses, or that he is not giving personal attention to his business. Mrs. Williams is a young woman and apparently possesses normal health. Her social position will not be materially affected nor will her normal course of living be required to be cheapened by reason of the reduced amount. With only herself and her young daughter to clothe, feed and maintain, plus the general and reasonable upkeep (other than interest and taxes) of a home of the type and located in the community in which she resides, I am satisfied that an allowance of $500 monthly resolves itself into a surplus of such proportions as to amount to enrichment, and concerning which Mrs. Williams need not account should contempt proceedings be instituted against defendant as the result of his future defaults. Neither do I understand the rule to be that the former social position is permitted to be maintained by the wife at the expense of the forfeiture of the husband's when such for-

feiture is occasioned by his known financial inability to maintain the standard previously established by them.

There is nothing before me to indicate the actual wants of Mrs. Williams. What she would have a right to expect from defendant had she continued to live with him I have hereinabove commented upon. Considering defendant's present net income, in conjunction with what I consider to be Mrs. Williams' actual wants, the payment of $500 per month is oppressive; to deny his petition for reduction will result in nothing short of completely breaking down every incentive to exertion on the part of defendant and immeasurable injury to the true interests of all concerned. Equity does not encourage such possibilities.

In arriving at the foregoing conclusions I have not been unmindful of the rule laid down in *Rigney* v. *Rigney, supra,* wherein Chancellor Magie stated that an application such as this "must exhibit changed circumstances and new facts which have arisen since the decree. To succeed upon such an application there must be clear proof of such new facts and circumstances as will justify and require a variation in the alimony allowed, either increasing or diminishing it. *2 Bish. Mar. & D.* §§ *429, 429a, 433.* There must be cogent reason for diminishing the amount of alimony. *Barrett* v. *Barrett, 41 N. J. Eq. 139; 3 Atl. Rep. 689."* But all of the equities warrant the tempering of this rule not only with the stress of the prevailing financial situation but with the several other factors herein cited as the equitable basis of measurement in establishing the amount of permanent alimony; these factors constitute, collectively, a "cogent reason for diminishing the amount of alimony." *Barrett* v. *Barrett, supra.* As collateral security for the payment of $3,900 annually, defendant will assign to Mrs. Williams his salary as secretary and treasurer of The Call Printing and Publishing Company. A form of decree may be submitted by defendant in accordance with the foregoing. Unless the respective solicitors can agree upon a reasonable counsel fee on this application, considering, also, the application for custody of the child previously disposed of by decree, I will hear them on appropriate notice.