KELLY, Appellant, v. KELLY, Respondent

No. 8535

Submitted March 2, 1945. Decided April 18, 1945.

157 Pac. (2d) 780

Mr. R. H. Wiedman of Polson for Appellant.

Mr. Lloyd I. Wallace of Polson for Respondent.

MR. JUSTICE ADAIR delivered the opinion of the court.

This is an appeal from an order modifying the terms of a divorce decree.

The parties were married at Polson, Montana. Two children were born as the issue of the marriage. It appears from the record that while residing at Polson the defendant wilfully neglected to provide the common necessaries of life for his wife and children, as the result of which the plaintiff in 1938 placed the children, both then under the age of two years, in the care of Mr. and Mrs. J. L. David at their ranch home near Pablo, Montana, where they were cared for continuously until March 1944, that being the date of the order from which this appeal is taken. After making arrangements for the care of the children at the David home, the plaintiff obtained employment as a domestic servant at Fort Missoula, Montana, and from her wages contributed such amount as she was able toward their support and maintenance.

In 1939 plaintiff filed suit for divorce against the defendant alleging wilful neglect. Summons and complaint were person-

ally served upon defendant in Lake county where the suit was commenced. Defendant failed to appear in the action and his default was duly entered. Testimony was introduced on behalf of the plaintiff, from which the court found all of the allegations of the complaint to be true, and in November, 1939, entered its decree in favor of the plaintiff granting her a divorce from defendant. By the terms of the decree the mother was given the custody of the two minor children, and the father was ordered to pay to the clerk of the court for the plaintiff's benefit for the support and maintenance of said minor children $25 each month, the first payment to be made December 1, 1939.

Subsequent to the entry of the decree, defendant removed to the state of Washington, where he has since resided. He has remarried. His present wife has two children, aged seven and nine years, by a former marriage. Defendant is employed in a defense industry where his salary ranges from $300 to $400 per month. His present wife, after her marriage to defendant, was employed for a time at a defense plant and while so employed entrusted her children to the care of her mother who resides in Seattle. The draft board has granted defendant a 2-B classification under the Selective Service Act, 50 U. S. C. A. Appendix Sec. 301 et seq., and thus far, at the request of his employer, he has been deferred from military service.

Defendant has at all times refused and failed to comply with the requirements of the decree as to the monthly payments above referred to, and was at the time of filing his petition hereinafter mentioned owing and in arrears on past due installments an aggregate of $1,250.

In January of 1944 defendant filed in the district court a petition for modification of the 1939 decree, requesting that the court modify such decree by awarding the care, custody and control of the said minor children to him, and that he be permitted to remove said children from the state of Montana to the state of Washington.

Plaintiff moved the court to strike defendant's petition from its files. This motion challenged the defendant's right to peti-

242

tion the court to modify a decree which he had deliberately and continuously disobeyed for over four years. Plaintiff contended that defendant before so petitioning the court must first pay the delinquent installments due under the decree and thus purge himself of contempt. Ruling on this motion was reserved, whereupon the plaintiff answered, placing in issue certain allegations of the petition.

At the hearing Mr. and Mrs. David testified in plaintiff's behalf, while defendant and his present wife testified in his behalf. No other testimony was received. Although not personally present, plaintiff was represented at the hearing by counsel.

At the hearing, when asked by his attorney to explain why he had not made any of the payments under the decree, the defendant testified: "The wife didn't at any time after that have the children with her. She never kept them with her at all. They were at Davids' home, and I don't know, I didn't feel the money would do them any good."

On cross-examination by plaintiff's counsel defendant testified:

"Q. What is your intention with reference to abiding by the original court order to pay $25.00 a month for the support of your children? Do you intend to pay that up? A. That, I guess, is up to the court."

He further testified on cross-examination:

"Q. What have you supplied for the children since the granting of this divorce, in the way of clothing or anything? A. Not very much.

"Q. You knew where they were? A. I knew where they were, yes.

"Q. You knew that your former wife was working? A. I have never been sure of it.

"Q. As a matter of fact, didn't you know she was working at Fort Missoula for a family down there? A. That's what I heard, yes.

"Q. Along in the month of November 1939 you received a certified copy of this decree, didn't you? A. Yes.

"Q. You read that over? A. Yes.

"Q. You had never complied with that decree in any way so far as payments were concerned? A. I haven't made the payments, no."

It appears from the record that since she was a baby plaintiff has been cared for at the home of her aunt and uncle, Mr. and Mrs. J. L. David. She returned there in 1938, and as above stated her minor children remained there continuously until March 1, 1944. During the period from 1938 plaintiff has contributed a total of about $500 to the Davids toward the support of the children. At times the public welfare department of Lake county has contributed toward their support. Such assistance from the welfare department was twice "cut off" and at the time of the hearing no such aid was forthcoming. Mr. David testified that if from now on there is no help from either of the parents he would continue to keep the children "because I like them," and he would not apply for assistance from the welfare department, saying: "I have monkeyed with it as long as I care to. It's this way with me. I have had them long enough so that they like me and I like them. I feel it would be my duty to keep them."

After defendant removed to the state of Washington, the plaintiff married. Her husband is a member of the United States Coast Guard. At the time of the hearing he was stationed at Fishers Island, New York, where plaintiff was then residing. It does not appear that plaintiff has visited the children for three years preceding the hearing. Mrs. David testified that she knew plaintiff's intention with reference to her children and that "She is going to take them as soon as she can. They are coming back here as soon as he can get out. That will be after the war. * * * I know that Louise will take care of her kids. She has provided for them. The Kelleys never have. * * * She sends them money too. She sent me $40.00 but Glen doesn't send anything. * * * I will do anything on earth for Louise and those kids. I want Louise to have those boys when she wants them because Louise spent about $500.00

244

on those kids of her own money already. She has sent everything she could pinch out."

It appears that the David home is a proper place for the care and upbringing of the children and that the Davids are able to provide proper quarters and food for the children. The children were regularly attending the public school at Pablo. The Davids, who have no children of their own, have signified their willingness to care for, maintain and educate the children without reimbursement from any source.

Defendant has deliberately, wilfully and continuously refused to make the payments required by the decree, and under such facts he is not entitled to petition for a modification of the decree (see Cooper v. Cooper, 103 N. J. Eq. 416, 143 A. 559; Robins v. Robins, 106 N. J. Eq. 198, 150 A. 340; Williams v. Williams, 12 N. J. Misc. 641, 174 A. 423; Traudt v. Traudt, 116 N. J. Eq. 75, 172 A. 749, 752; Royce v. Royce, 124 N. J. Eq. 469, 1 A. (2d) 878; In re Elmer's Guardianship, 125 N. J. Eq. 148, 4 A. (2d) 387; Davis v. Davis, 135 N. J. Eq. 129, 36 A (2d) 867) unless the best interests and welfare of the children require the modification. We find nothing in the record before us to indicate that the best interest and welfare of the children would be served by the modification prayed for.

On March 1, 1944, the district court denied plaintiff's motion to strike defendant's petition, and made an order modifying the decree, awarding custody of the children to defendant and permitting him to remove them to the state of Washington.

Respecting the monthly installments required of the defendant by the terms of the decree, the district court observed, "Of course the payments in there that he was to have made are also to be stricken out." Although not prayed for in the petition the court ordered that the decree be modified by eliminating therefrom the provision requiring defendant to pay to the clerk of the court $25 per month for the use and benefit of the plaintiff for the support and maintenance of the minor children.

The decree is not subject to modification as to installments past due and unpaid. Adair v. Superior Court, 44 Ariz.

139, 33 Pac. (2d) 995, 94 A. L. R. 328; State ex rel. Paganini v. District Court, 107 Mont. 195, 81 Pac. (2d) 697; Cole v. Cole, 101 Utah 335, 122 Pac. (2d) 201; Sistare v. Sistare, 218 U. S. 1, 30 S. Ct. 682, 54 L. Ed. 905, 28 L. R. A., N. S., 1068, 20 Ann. Cas. 1061.

There is no substantial conflict in the evidence and the record ■ fails to show the defendant to be entitled to the relief prayed for.

At the conclusion of testimony the trial court observed: "It is not a question now whether the father and his present wife will have the children or the mother. Not at all. It is a question whether the father and his present wife will have these boys from now on, or whether these good people Mr. and Mrs. David will have them. There is no question the boys have been well looked after, unusually well looked after." We do not agree that the question presented was whether the father and the stepmother or the Davids should have the care of the children. The question was whether the evidence justified the trial court in modifying the decree so as to deprive the mother of their custody and giving custody to the father. We think the paramount question before the trial court was the welfare of the children. Although living at the David ranch they were nevertheless in the custody of the mother and the decree recognized her right to such custody. The trial court recognized that the children have been unusually well looked after. We must conclude from the evidence that the trial court was not justified in holding that the welfare of the children required such a modification of the decree, and we therefore hold that such modification constituted an abuse of the court's discretion. This is also true of the order authorizing defendant to remove the children from the jurisdiction of the trial court.

It was error for the court to make the order from which this appeal was taken. The cause is remanded to the district court with directions to annul, vacate and set aside the order of March 1, 1944, and the original decree is reinstated and ordered to stand as the judgment of the court.

Mr. Chief Justice Johnson and Associate Justices Morris and Cheadle concur.

Justice Angstman (dissenting):

I dissent.

As I read the record the majority opinion does not present the full picture of the problem confronting Judge Besancon when he made the order modifying the decree. His duty was to do what appeared to him to be best for the welfare of the children. State ex rel. Floch v. District Court, 107 Mont. 185, 81 Pac. (2d) 692; Haynes v. Fillner, 106 Mont. 59, 75 Pac. (2d) 802. Judge Besancon found there was fault on the part of both the father and the mother. The father of course was at fault for not supporting the children as required by the decree. On the part of the mother the court found that she has since married and at the time of the hearing had two children, born of the subsequent marriage; that at the time of the hearing she had not seen the children here involved for three years. The mother did not appear at the hearing and neither did her present husband.

The court had no way of knowing what the attitude of plaintiff's present husband toward the children would be or whether he desired to take them into his home. Mrs. David testified that it is plaintiff's intention to take the children into her own home after the war, but whether her present husband so desired the record does not show.

The chaplain of the United States Coast Guard Academy, where her husband is serving, wrote a letter to plaintiff's attorney about the time of the hearing, explaining that since her residence is temporary and due to housing conditions it was then difficult for plaintiff to have the children live with her. The mother, it is true, contributed as much as she could to the support of the children, while she was working, but there is nothing in the record to indicate that she has displayed any interest in the children or contributed anything to their support since she has remarried. Mrs. David was asked this question, "You folks have managed to take care of them without any

help from their folks?" To which she replied, "We had to, the kids would be dead if they had to wait for them."

Mr. and Mrs. David, it is true, had taken good care of the children, they having sought and obtained aid from the Public Welfare Department which allowed them $20 per month which Mrs. David said they had received during the entire period when they cared for them excepting for a few months. Had they been petitioning the court for their custody the court would have had before it a different question. They were not asking for the privilege of retaining the custody in their own right.

The policy of the law is that the father and the mother are entitled to the custody of minor children. Sec. 5834, Revised Codes. This is to assure them parental direction and guidance so far as possible. This rule will be departed from only for the most cogent reasons. 27 C. J. S. Divorce, Sec. 308, pp. 1168 and 1169. The trial court, it should be remembered, was in a better situation to determine what is best for the children than are we. The district judge saw Mr. Kelly and his present wife and the other witnesses, and heard them testify. The Kellys promised to give the children a good home and parental care. The present Mrs. Kelly said she will care for them personally but in the event her husband is drafted she can return to her former employment and her mother, who lives near her, will care for the children during working hours. To the credit of Mr. Kelly it should be said that he has visited the children three times since going to Seattle and before that he visited them "every couple of months" but was not permitted by Mrs. David to take the children to town or off the place.

I am not prepared to say that Judge Besancon abused his discretion in awarding the custody of these boys to Mr. Kelly. But if he did abuse his discretion we have before us this situation. The children have now been with their father for more than thirteen months. Will it be to their best interests to now order them returned to Mr. and Mrs. David? I realize that ordinarily we must either affirm or reverse the trial court on the record that was before it. But I think that rule should

be relaxed when the interests of children are involved. Our duty to safeguard the interests of minor children is just as imperative as that of the trial judge.

Since my associates think the district court abused its discretion on the evidence before it, I believe the cause should be remanded with directions that the court hear further evidence on the point as to whether the best interests of the children will now be served by restoring them into the custody of the mother or Mr. and Mrs. David. The children are now of sufficient age to furnish evidence of their own as to the kind of care and attention given them.

It is entirely possible that conditions may have so changed since March 1, 1944, that Mr. and Mrs. David are not now able to care for the children. On the other hand, they may now be given such good care that it would be unjust to them to again change their custody. We should be careful not to permit our disgust for the conduct of the father in the past to work to the permanent detriment of the children. I should say in passing that the fact that the divorce was granted for fault of the husband does not necessarily bar him from the right to the custody of the children. Boles v. Boles, 60 Mont. 411, 199 Pac. 912.

I think also the court should indicate clearly whether Mr. Kelly is barred for all time from asserting the right to the custody of his two sons or whether the payment of the past due installments is all that stands in his way. As to whether Mr. Kelly is still obligated to pay the past due installments ordered paid, that question is not before us in this case. The trial court's order recites that the decree providing for the $25 per month be modified "by eliminating said provision from said decree, so that such payments shall henceforth be not required."

Since Judge Besancon modified the decree so as to place the children in the custody of Mr. Kelly, it was proper to strike out the clause requiring payments in the future and that is all the order does. It does not purport to affect past due installments.

Certainly Mr. Kelly should not be obliged to pay the installments for the past 13 months when he himself has provided a home for his boys. It was to guard against such double payment that the district judge eliminated that provision from the decree. On the assumption that past due installments must still be paid, I express no opinion as to who is entitled to receive them under the peculiar circumstances of this case.