AGNES I. PORTER, Plaintiff and Respondent, v. ROBERT
J. PORTER, Defendant and Appellant.

No. 11806.
Submitted April 7, 1970.
Decided July 29, 1970.
473 P.2d 538.

Berger, Anderson & Sinclair, James J. Sinclair, argued, Billings, for defendant and appellant.

Derry, Hanser & Derry, Harold F. Hanser, argued, Billings, for plaintiff and respondent.

MR. JUSTICE DALY delivered the Opinion of the Court.

Respondent, Agnes I. Porter, on April 3, 1968, sought relief in the district court of Yellowstone County on an order to show cause citing appellant, Robert J. Porter, to appear and show cause why he should not be held in contempt for failure to pay alimony from July 1966 This action was founded on a divorce decree entered April 26, 1948, wherein appellant was ordered to pay respondent $150 per month as alimony and $75 per month for each of two minor children, Jerome, then age 11 years, and Richard, then age 2 years, for their support, maintenance and education. This judgment was in accord with a separation and property settlement agreement previously entered into by the parties, approved by the district court, and incorporated into the decree of divorce.

The property settlement in general terms gave the home, furnishings, family car, a piece of property on Poly Drive, Billings, Montana, and certain Hamilton funds to respondent Agnes Porter. Respondent agreed to "* * * properly care for, maintain and educate said minor children." Appellant, Robert Porter, received the business properties which consisted of a liquor and beer license to the Elmo Club and some 77.61 acres of land upon which it was located.

Appellant filed responsive pleadings by petition asking the original decree of divorce be amended to relieve appellant from any further obligation to continue alimony payments to respondent; and further denied he was delinquent in alimony payments.

On August 15, 1969, the matter was heard by the district court and oral testimony and exhibits were received and the matter submitted.

Both parties agree the obligations under the decree are decretal and not contractual.

It was uncontradicted that appellant completed his child support obligation under the decree until both minor children attained the age of majority and appellant had paid his alimony obligation regularly, through the month of July, 1966. There was no evidence of alimony payments after July 1966. Evidence was received that appellant made extra payments by introduction of exihibit "A" and appellant testified exhibit "A" to be true and correct. It was not established that the amounts indicated in exhibit "A" were paid to alimony.

The circumstances or change thereof of the parties was in general agreement for the most part and revealed that respondent, Agnes Porter, did not remarry and became employed full time in 1966 at which time the youngest child was 20 years of age. Respondent's income at the time of the hearing was $72 per week salary and $70 per month from apartment rental in her home. Her average monthly expenses for the past 3 years was $285. Income figures were gross and no net figures were produced.

Appellant remarried after the divorce and has a second family, Debbie Porter, age 19, Pat Porter, age 16, Mike Porter, age 15, at the date of the hearing.

The business properties received at the time of the divorce by the appellant were sold and/ or traded for a similar type of business in 1950-51. The new business is the Turf, Inc. which is operated as a corporation with appellant as manager, corporate officer, and stockholder. Appellant's present wife has an undisclosed interest in the Porterhouse Corporation located on 8 acres of land, a portion of the Elmo Club property, originally owned by the appellant

Evidence of each party's circumstances was received from the party themselves, subject only to cross examination. No other evidence on these matters was offered by either party.

The district court found a failure to pay alimony but ruled it did not constitute contempt of that court. The court ordered appellant to pay to respondent $150 per month commencing with August 1, 1966, through September 31, 1969. The court further ordered a reduction in alimony payments from $150 per month to $100 per month, commencing on October 1, 1969.

From this judgment appellant appeals on three issues:

1. The evidence does not justify the continuance of alimony payments by appellant to respondent.

2. The evidence does not support the order of the court that appellant owes respondent any money.

3. The court abused its discretion in not striking from the divorce decree the alimony award to be paid by appellant to respondent, and in finding appellant in arrears in alimony payments.

Appellant advances two arguments in support of his position. (1) Respondent has had an improved change in circumstances and is self-sustaining and with the $100 alimony award is financially better off than appellant. (2) Appellant is financially unable to pay the alimony award by virtue of having less income than respondent, and he is burdened with family obligations.

Appellant declares the first argument to be the principal one and bases his contention on respondent's gross income for the past several years and alleges her 1969 income from wages and apartment rental to be $348 per month *net*, with $285 monthly expense, giving her a $60 plus monthly profit.

As heretofore indicated, there is no evidence in the record to support appellant's claim that the income attributed to respondent is net income. All figures produced are gross income figures. A close examination of the income tax returns of respondent, filed as exhibits, reveals the net income of respondent to

be a substantially lesser amount. This does not square with appellant's argument claiming the respondent enjoyed a $60 per month income profit over her expenses. It would seem to reflect a loss for each year that tax returns were furnished.

We next discuss appellant's secondary argument, that consideration be given to his change in circumstances.

The only evidence of appellant's circumstances at the time he agreed to pay $300 per month in 1948, is by his own testimony, "Everything that we had at that time I give to her, outside of the license." The record indicates the license he retained to be located in the Elmo Club, together with the 77.61 acres of land as set forth in the above property settlement agreement. Appellant's earnings for 1948 are not indicated but we must assume they were sufficient to carry out his obligations of support and alimony. Around 1950-51, the Elmo property was sold and/or traded in a transaction that gave birth to the Turf, Inc. The Elmo property was valued at $50,000 and the license at $17,000.

Appellant testified he received no money from this transaction; it was a partnership deal and Egans received the money. Yet appellant was established as manager, corporate officer, and stockholder of the Turf, Inc., its value being $50,000. Appellant testified further that he was uncertain as to all of the corporate officers beyond his family or the exact amount of stock held by them or himself. This business and appellant's present wife's interest in the Porterhouse Corporation, saw the first family raised, appellant in a $37,000 home with a $22,000 mortgage, 2 automobiles, a Larson boat with a mortgage and a second family almost raised A bad financial venture in a place described as the Owl's Roost and a closure of the Turf, Inc. by health authorities brought a financial decline beginning in 1965 through 1968. But, again, appellant's testimony leaves his exact financial status with regard to income less than clear. In his testimony concerning transactions wherein $40,000 was borrowed from the O. E. Lee Company in 1967 using the Turf, Inc. and the Porterhouse Corporation for security and diverting

a portion of this loan for living expenses, appellant makes no satisfactory explanation in terms of resulting real income to him or the extent of his interests. Yet this obligation is being repaid at the rate of $500 per month by the Turf, Inc. with no personal obligation to appellant. At the same time, appellant claims no interest in Porterhouse Corporation.

The loan in 1968 from the Midland Bank in the amount of $5,000 is very much the same, with the Turf, Inc. obligated to make repayment.

Appellant testified his sole income during 1967 and 1968 was $100 per week as manager of the Turf, Inc. and was the same at the date of the hearing.

Appellant's testimony indicated that in 1969 the Turf, Inc. was making a slow recovery from the described financial distress and profits should be up for 1969.

The issue of the payment of back alimony was raised, together with the abuse of the court's discretion, but was not argued by either party. However, it is worthy of notice.

■ The trial court's order for payment of unpaid back alimony in full was proper when the evidence showed it to be unpaid since 1966. In Woehler v. Woehler, 107 Mont. 69, 72, 81 P2d 344, the Court set forth the rule while interpreting section 5769, R.C.M.1921, now section 21-137, R.C.M.1947, in the following language:

"This general rule is declared in 19 C.J. 272, as follows: 'Statutes authorizing the alteration and modification of judgments or decrees allowing alimony have been held to have no retrospective effect, and the power to modify extends only to future installments and not to alimony already accrued, in the absence of clear language manifesting contrary intent.' "

Section 21-139, R.C.M.1947, being the statute that controls in the instant case, reads as follows:

."Where a divorce is granted for an offense of the husband, the court may compel him to provide for the maintenance of the children of the marriage and to make such suitable allow-

ance to the wife for her support during her life, or for a shorter period, as the court may deem just, having regard to the circumstances of the parties respectively, and the court may, from time to time, modify its orders in these respects   *   *   *.''

We find no clear language manifesting a contrary intent. See also, Kelly v. Kelly, 117 Mont. 239, 157 P.2d 780.

The evidence presented to the trial court which was intended to reflect the financial status of the appellant was, as stated at the best cloudy and therefore does not contain enough force to justify this Court to disturb the trial court's ruling in regard to it. The court apparently recognized a change in the parties' circumstances in granting the alimony reduction.

This Court is well aware of its role when asked to look into matters of abuse of discretion of the trial court and we have noted the number of cases and other citations given us by the parties. We feel an approved composite position simply stated would be: a reviewing court is never justified in substituting its discretion for that of the trial court. In determining whether the trial court abused its discretion, the question is not whether the reviewing court agrees with the trial court, but, rather, did the trial court in the exercise of its discretion act arbitrarily without the employment of conscientious judgment or exceed the bounds of reason, in view of all the circumstances, ignoring recognized principles resulting in substantial injustice.

We do not find that the trial court acted in this manner and with both parties citing for authority Daniels v. Daniels, 147 Mont. 57, 409 P.2d 824, the Daniels case is decisive and controlling

Judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES, JOHN C. HARRISON and HASWELL concur.