No. 12428

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

MARY SOMERVELL LATUS,

Plaintiff and Appellant,

-vs-

DALE NELSON LATUS,

Defendant and Respondent.

Appeal from: District Court of the First Judicial District,
Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Ross Cannon and Donald Garrity argued, Helena, Montana

For Respondent:

Risken and Scribner, Helena, Montana
A. W. Scribner argued, Helena, Montana

Submitted: October 1, 1973

Decided: DEC 18 1973

Filed: DEC 18 1973

Thomas J. Kearney
————————————————
Clerk

Hon. Paul G. Hatfield, District Judge, sitting for Mr. Justice John Conway Harrison, delivered the Opinion of the Court.

Plaintiff appellant Mary Somervell Latus and defendant respondent Dale Nelson Latus were married in Whitestone, Virginia, December 28, 1943. Upon the husband's discharge from the United States Navy in 1947, they moved to Helena, Montana, where the husband started an electronics business. At that time their son, George, now 28 years old, was five. He has a sister who is now 23.

Nothing extraordinary happened within the marriage relationship until 1951 or 1952 when the wife began to evidence signs of mental instability, which apparently became progressively worse, until she required hospitalization in 1957, and later.

On June 11, 1963, the wife filed for divorce. On July 15, 1963, Judge John B. McClernan, after a lengthy conference in Chambers with counsel for both parties and, according to the husband, a short conference with him, entered an order for $250 per month temporary support for the wife. The wife at this time had left the family home and children, although her daughter did accompany her mother at times on different travels.

Nothing further was done until the divorce was heard in July 1972, or 108 months later.

In August 1963 the husband commenced making support payments of $250 a month as ordered, for a total in 1963 of $1,250, and in 1964 of $3,000. The court found he paid $3,000 in 1965, although the wife disputes this. He paid only $950 in 1967 and $1,050 in 1968, for a total of $9,950. In addition the court found and credited the husband with $1,000 which he paid to the State of Montana Department of Institutions for hospitalization of the wife. The court also credited the husband with one-half of the mortgage payments he had made on the joint tenancy house in the sum of $7,376, making the total credit to the husband in the amount of $18,326.

The payment of $250 per month for 108 months is $27,000 and subtracting the $18,326 credited to the husband should result in the sum of $8,674, or $500 more than was found by the trial judge, and this amount is now owing from the husband to the wife.

In addition, the court ordered the husband to either sell the joint tenancy house and give the wife one-half of the proceeds or pay the wife $10,000 as her one-half interest in the joint tenancy house. The wife is critical of crediting the husband with the $7,376 mortgage payments, and the husband has cross-appealed because the wife was given an interest in the joint tenancy house. We feel this matter was properly within the trial court's discretion and will not be disturbed.

The trial judge then found the husband was entitled to a divorce from the wife, and the wife was not entitled to a divorce from the husband. The trial judge disposed of the joint property, as stated above, and ordered the husband pay the delinquent support payments in installments of $150 per month.

The main appeal and cross-appeal is the application of section 21-137, R.C.M. 1947, to this factual situation and whether the interpretation given in Woehler v. Woehler, 107 Mont. 69, 71, 73, 81 P. 2d 344, applies. Woehler was an appeal from a modification by the trial judge of past due support payments with a contempt proceeding. In the instant case, the wife maintains she was only applying for a lump sum judgment so that she could execute and, therefore, there is a distinction and a difference in this case than there was in the application of section 21-137, R.C.M. 1947, in Woehler.

The court made the following order in Woehler:

> "Now, therefore, it is ordered, adjudged and decreed, and this does order, adjudge and decree, that the aforesaid decree, entered herein on June 21, 1930, be, and the same hereby is modified so as to require the plaintiff to pay to defendant each month, from and after October 1, 1936, the sum of $50 for the care and maintenance of the above-named defendant, and no more, except as hereinafter provided.

- 3 -

"It is further ordered, adjudged and decreed, and this does further order, adjudge and decree, that said plaintiff be required, and he is hereby required, to pay to defendant each month, in addition to the said sum of fifty dollars hereinabove provided for, the sum of twenty-five dollars to apply on monthly payments previously due defendant and for which plaintiff is now in default, and that no other or further payments by plaintiff to defendant of moneys in default, as aforesaid, shall be required of said plaintiff."

The trial judge in the instant case ordered:

"4. That the accrued arrearage in support payments under the order of this court dated July 16, 1963, hereby declared and adjudged to be in the sum of Eight Thousand one-hundred-seventy-four Dollars ($8,174), with interest at the legal rate of six per cent (6%) from and after the date of this decree, shall be paid by the defendant to the plaintiff in the following manner: Sixty-three (63) equal successive monthly installments of principal and interest in the total monthly sum of One-hundred-fifty Dollars ($150), the first such installment to be due and payable on August 10, 1972, and each successive installment to be due and payable on the 10th day of the month following. The defendant shall have the option to prepay the entire principal balance at any time before the final due date, the amount of such principal payment at such time outstanding to be computed upon an appropriate amortization schedule."

In <u>Woehler</u>, after citing Section 5769, now section 21-137, R.C.M. 1947, this Court stated:

"The last sentence in the above section makes it clear that the enforcement of the final judgment in such an action may be controlled by orders of the court, in the exercise of its discretion. While the statute does not expressly mention past due installments, it seems to us that its terms are broad enough to comprehend delinquent installments, and that, in fact, the legislature in enacting its provisions was actuated more by the consideration of delinquent than by future installments.

"<u>It should be remembered that there is here no modification of the decree in respect to the amount due. The order relates only to the enforcement of the decree.</u> That order also, by the concluding clause in section 5769 [section 21-137, R.C.M.1947], is subject to future alteration, variation or revocation at the discretion of the court.

"The court had jurisdiction to make the order so far as it relates to the enforcement of the decree as to past due alimony." (Emphasis added).

This is what the trial court did in the instant case. We see no reason why a distinction should be made between the support payments in <u>Woehler</u> and the temporary support payments in this case. The only difference appears to be that enforcement was

- 4 -

attempted by contempt proceedings in Woehler, and by application for a money judgment in this case. We are dealing with temporary support ordered under section 21-137, R.C.M. 1947, as opposed to final orders under section 21-139, R.C.M. 1947. The above quotation from Woehler applies equally to this case. See also: Kelly v. Kelly, 117 Mont. 239, 157 P.2d 780; Porter v. Porter, 155 Mont. 451, 457, 473 P.2d 538.

The wife is vehement in her statement that the trial judge could not allocate or credit one-half of the mortgage payments made in the sum of $7,376. However, the trial judge in his division of the joint property found the wife was entitled to $10,000, or at least $10,000, for her investment of $7,376.

The wife states in several instances that the trial judge abused his discretion in some of the above matters. However, the statement in Porter by this Court, applies here:

> "We feel an approved composite position simply stated would be: a reviewing court is never justified in substituting its discretion for that of the trial court. In determining whether the trial court abused its discretion, the question is not whether the reviewing court agrees with the trial court, but, rather, did the trial court in the exercise of its discretion act arbitrarily without the employment of conscientious judgment or exceed the bounds of reason, in view of all the circumstances, ignoring recognized principles resulting in substantial injustice."

The trial judge did not abuse his discretion and, therefore, the judgment is affirmed, except that the judgment is modified from $8,174 to $8,674, or $500 more than was found by the trial court, a mathematical error, as set out above.

Hon. Paul G. Hatfield, sitting for Justice John Conway Harrison.

We Concur:

Chief Justice

Justices

- 5 -